OPINION
{¶ 1} Defendant-Appellant Robert Lee Norris appeals the judgment of the Stark County Court of Common Pleas classifying Appellant as a sexual predator.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} This Court has previously documented the underlying facts of this case in State v. Norris (Feb. 21, 1995), Stark App. No. CA-9436. We stated:
 {¶ 3} "Sheila Knutty first met appellant while walking down the street with a friend. Sheila was sixteen years old at the time. Appellant asked Sheila to braid his hair. While she was braiding his hair, he talked to Sheila about his daughter.
 {¶ 4} "On October 15, 1992, appellant called Sheila and asked her to help him plan a birthday party for his daughter. Sheila agreed, and she met appellant and Kimberly Southall, appellant's girlfriend, at a gas station near her home.
 {¶ 5} "The trio drove to appellant's house in Massillon. Sheila went upstairs to the bathroom. When she came out, appellant asked her to come into Kimberly's bedroom. Appellant told Sheila that he was going to take pictures of her. Sheila got up to leave, but appellant threw her down on the bed. Appellant began to smoke crack cocaine.
 {¶ 6} "When Sheila again tried to leave, appellant pushed her on the bed, brandished a pair of scissors, and told her that she was going to do what he wanted. The door to the bedroom was locked at this time.
 {¶ 7} "Appellant forced Sheila to smoke crack by covering her mouth and nose with his hands. Holding the scissors to her neck, he made her put on a pair of shorts and a tee shirt. Appellant then made her imitate poses from a magazine. *Page 3 
 {¶ 8} "Appellant tied Sheila's hands with yarn, and began touching her chest and vagina. Kimberly came into the bedroom, and appellant sent her out to buy more crack.
 {¶ 9} "Appellant repeatedly forced Sheila to engage in vaginal intercourse with him. He also forced her to perform oral sex on him, holding the scissors to her neck.
 {¶ 10} "Kimberly came back into the bedroom. At appellant's demand, Kimberly touched Sheila's vagina and performed oral sex on Sheila. Kimberly later fell asleep in the room.
 {¶ 11} "Appellant again repeatedly forced Sheila to engage in sexual conduct with him. At one point, appellant untied Sheila. When she screamed, he cut her chest with the scissors.
 {¶ 12} "Eventually, appellant agreed to release Sheila. He woke Kimberly up, and they took Sheila to a friend's house in Massillon. Sheila immediately went to Aultman Hospital.
 {¶ 13} "On August 3, 1992, Janet Homan, who was twenty-three years old, rented a room at Rolando's Hotel in Canton. She paid half of the rent money, and agreed to pay the balance later that evening.
 {¶ 14} "Janet returned to Rolando's after work to pay the balance due. The hotel manager introduced her to appellant and to another man, who were standing in the lobby.
 {¶ 15} "Appellant accompanied Janet to her room. The hotel managers delivered a television to the room, which appellant hooked up for Janet. The managers asked *Page 4 
appellant to keep an eye on Janet, as the hotel had a reputation of housing drug dealers and prostitutes.
 {¶ 16} "Appellant left Janet's room to get some change. When he returned, he told Janet that the police were outside investigating drugs. He told her that she could not leave the room, and asked if she was a cop. She responded that she was not a cop. Appellant asked her to prove it by taking a hit off his crack pipe. Janet refused, and threatened to call the police if he did not release her.
 {¶ 17} "Appellant became angry. He grabbed Janet by the arm, telling her that if she tried to get away, he would "knock the shit out of her." He forced Janet to his room with his arm around her neck.
 {¶ 18} "In his room, appellant threw Janet on the bed, removing all her clothes except her bra and underwear. He removed her from the bed, placed her on a chair, and bound her arms with neckties. She agreed to give him her paycheck if he would let her go. He forced her to sign the paycheck, and left the room with the check. When appellant returned, he forced Janet to imitate poses from a Playboy magazine. He held a knife to her throat, and forced her to smoke crack.
 {¶ 19} "Appellant then took off his clothes, and forced Janet to perform oral sex on him, holding the knife to her throat. He performed oral sex on her, and then forced her to engage in vaginal intercourse with him for two to three hours. He made her `lick his butt,' and attempted to perform anal intercourse on her.
 {¶ 20} "Janet eventually passed out, waking at 8:00 A.M. on August 4, 1992. She told appellant that she had to be at work, but would come back. He agreed to *Page 5 
release her. A hotel manager drove appellant and Janet to a relative's house, where Janet called the police, and went to Aultman Hospital."State v. Norris, supra, *1-*2.
 {¶ 21} On November 12, 1992, the Stark County Grand Jury indicted Appellant on one count of kidnapping in violation of R.C. 2905.01, an aggravated felony of the second degree, and two counts of rape in violation of R.C. 2907.02, aggravated felonies of the first degree. All of the counts in the indictment contained specifications, pursuant to former R.C. 2941.142, that Appellant had previously been convicted of or pled guilty to aggravated kidnapping, sexual intercourse without consent (2 cts.), and sexual intercourse without consent.
 {¶ 22} Counts one and two (kidnapping and rape) were bifurcated from count three (rape) and tried separately, as count three involved a different victim. A jury trial on the charges contained in counts one and two commenced on July 20, 1993. On July 26, 1993, the jury returned a verdict finding Appellant guilty on both counts.
 {¶ 23} A jury trial on the remaining charge of rape as contained in count three of the indictment commenced on August 31, 1993. The jury, on September 3, 1993, returned a guilty verdict.
 {¶ 24} Following a hearing held on September 9, 1993, the trial court found Appellant guilty of all three specifications. Thereafter, as memorialized in a journal entry filed on September 10, 1993, the trial court sentenced Appellant to an indeterminate term of incarceration of fifteen to twenty-five years, plus a fine of $10,000, on each of the three counts. The trial court further ordered that the minimum term of fifteen years "shall be served as actual incarceration." The three sentences were to be served *Page 6 
consecutively with each other. Appellant's aggregate sentence was thus 45-75 years in prison with total fines of $30,000.
 {¶ 25} Appellant thereupon appealed his conviction and sentence, raising a total of sixteen assigned errors. Upon review, this Court affirmed the judgment of the trial court. See State v. Norris (Feb. 21, 1995), Stark App. No. CA-9436.
 {¶ 26} The trial court issued a nunc pro tunc judgment entry January 4, 1994, in order to direct the Stark County Sheriff to calculate Appellant's jail time credit. However, the trial court, in its January 4, 1994, judgment entry only sentenced Appellant with respect to the charge of kidnapping.
 {¶ 27} A second nunc pro tunc judgment entry to correct the omissions contained in the first nunc pro tunc judgment entry was issued by the trial court on October 13, 1995. The trial court, in this second nunc pro tunc entry, sentenced Appellant to 15-25 years imprisonment for each of the three counts, to be served consecutively, and imposed a $10,000 fine with respect to the kidnapping charge and a $20,000 fine as to each of the two counts of rape. On December 2, 1996, Appellant filed a petition for post conviction relief in the trial court. Appellant therein specifically claimed he was denied due process of law because of the trial court's issuance of the two nunc pro tunc judgment entries.
 {¶ 28} In the meantime, Appellant sought federal habeas relief. However, his petition for a writ of habeas corpus was denied in the United States District Court, Northern District of Ohio, in May 1996. Appellant then filed an appeal therefrom in the federal court system. On May 26, 1998, the United States Court of Appeals, Sixth Circuit, affirmed the judgment of the United States District Court denying Appellant's *Page 7 
petition for a writ of habeas corpus. However, in said opinion, the appeals court indicated that it "agree[d] with appellant that the sudden increase in fines from $30,000 in September of 1993 to $50,000 by August of 1995 needs to be explained since a `nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide.'" SeeNorris v. Schotten (1998), 146 F.3d 314, 333. Accordingly, the Stark County Court of Common Pleas thereupon issued a third nunc pro tunc judgment entry on July 9, 1998, clarifying that Appellant was to pay an aggregate of $30,000.00 in fines.
 {¶ 29} In response, Appellant, on July 21, 1998, filed in the trial court a "Notice of Non-Stipulation and Objection to an Apparent Additional Nunc Pro Tunc-Resentencing Entry Dated `July 9, 1998.'" The trial court issued a judgment entry on August 7, 1998, denying Appellant's "objection," ruling in pertinent part "the entry in this matter was filed to correct prior defects in the prior entries and does not in any way affect any of the defendant's fundamental rights." Appellant's appeal from the trial court's August 7, 1998, judgment entry was later dismissed by this Court based on our conclusion that it was not a judgment from which an appeal would lie.
 {¶ 30} On July 6, 2000, Appellant filed a motion for post conviction relief, captioned as a "Motion to Vacate or Set Aside Sentence." On July 7, 2000, the trial denied said motion. Appellant appealed to this Court from the trial court's July 7, 2000 judgment entry. Upon review, this Court affirmed the trial court's decision. See State v. Norris (March 26, 2001), Stark App. No. 2000CA00235. *Page 8 
 {¶ 31} The trial court set the matter for a House Bill 180 classification hearing. Prior to the hearing, the trial court appointed an expert witness at Appellant's request to prepare a psychological evaluation.
 {¶ 32} At the hearing on March 8, 2007, Appellant requested that he be permitted to represent himself. As a first matter, the trial court inquired as to whether Appellant understood the purpose of a House Bill 180 hearing. (T. 9-22). The trial court explained to Appellant the purpose of the hearing was to determine by clear and convincing evidence whether the defendant has been convicted of or pled guilty to committing a sexually oriented offense and whether it was likely the defendant would engage in the future in one or more sexually oriented offenses. (T. 9, 13). Appellant responded that he intended to argue the trial court lacked jurisdiction to conduct the hearing because his conviction had been reversed in Norris v. Schotten (1998), 146 F.3d 314, 333, and to also raise a claim of "actual innocence." (T. 11, 23).
 {¶ 33} The trial court then conducted an in-depth inquiry as to whether Appellant fully understood and intelligently relinquished his right to counsel. (T. 7-37). During the inquiry, the judge told Appellant that he required Appellant to conduct himself in a professional and respectful manner, and if Appellant did not, the judge would revoke Appellant's right to self-representation. (T. 31). The trial court found Appellant knowingly and voluntarily waived his right to counsel. (T. 36). The trial court also appointed an attorney to serve as Appellant's standby counsel. Id.
 {¶ 34} The hearing then proceeded with Appellant representing himself. Appellant informed the trial court that he would not be calling the psychiatrist as an expert witness on his behalf. (T. 38). The State then called the Stark County Clerk of *Page 9 
Courts as a witness. Appellant objected to the State calling the Clerk of Courts as their first witness when Appellant was the one who subpoenaed him. (T. 52). He stated that he objected because of the procedural posture of his case, that the trial court did not have jurisdiction. He stated that because he subpoenaed the Clerk of Courts, he should be the first to set his case. (T. 52). The trial court then found because of Appellant's lack of understanding of trial procedure and the purpose of the House Bill 180 hearing, it would be unfair to permit Appellant to continue to represent himself. The trial court re-appointed counsel to represent Appellant for the remainder of the hearing. (T. 55). The trial court permitted Appellant to proffer the evidence that he wished to elicit from the Clerk of Courts, namely the legality of Appellant's convictions based upon the nunc pro tunc entries.
 {¶ 35} At the conclusion of the hearing, the trial court found by clear and convincing evidence, Appellant had been convicted of sexually oriented offenses and that there was a likelihood that he would reoffend and therefore Appellant qualified as a sexual predator. (T. 171-175; Judgment Entry, April 4, 2007). It is from this judgment Appellant now appeals.
 {¶ 36} Appellant raises three Assignments of Error:
 {¶ 37} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S RIGHT TO REPRESENT HIMSELF AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 38} "II. THE COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT IS A SEXUAL PREDATOR AND CLASSIFYING HIM AS THE SAME. *Page 10 
 {¶ 39} "III. ROBERT LEE NORRIS CONTENDS THAT THE TRIAL COURT LACKED JURISDICTION OVER THIS MATTER."
 I. {¶ 40} Appellant first argues the trial court deprived him of his constitutional right of self-representation under the Sixth and Fourteenth Amendments. We disagree.
 {¶ 41} In State v. Gibson (1976), 45 Ohio St.2d 366, 354 N.E.2d 399, the Ohio Supreme Court held the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, guarantees a defendant in a state criminal trial an independent constitutional right of self representation permitting that defendant to proceed to defend himself without counsel when a defendant voluntarily, and knowingly, and intelligently elects to do so. Id. at syllabus, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. However, "Faretta itself and later cases have made clear that the right of self-representation is not absolute. See Martinez v. Court of Appeal ofCal., Fourth Appellate Dist., 528 U.S. 152, 163, 120 S.Ct. 684,145 L.Ed.2d 597 (2000) (no right of self-representation on direct appeal in a criminal case); McKaskle v. Wiggins, 465 U.S. 168, 178-179,104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (appointment of standby counsel over self-represented defendant's objection is permissible);Faretta, 422 U.S., at 835, n. 46, 95 S.Ct. 2525 (no right `to abuse the dignity of the courtroom')." Indiana v. Edwards (2008), 554 U.S. —, 128 S. Ct. 2379, — L.Ed.2d —.
 {¶ 42} Specific to this case, the U.S. Supreme Court has held the right of self-representation does not exist to "avoid compliance with `relevant rules of procedural and substantive law' or to `engage[e] in serious and obstructionist misconduct.'" Indiana, supra, citingFaretta, supra at 834, n. 46. "A trial court must be permitted to distinguish *Page 11 
between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." U.S. v.Frazier-El (2000), 204 F.3d 553, 560.
 {¶ 43} The circumstances surrounding Appellant's waiver of his right to counsel suggest more of a manipulation of the system to present particular arguments than a desire to invoke his right of self-representation. See id. As the trial court explained to Appellant, Appellant was before the trial court for a House Bill 180 hearing. When the State proceeded to present its evidence at the hearing, Appellant objected to the State first calling the Stark County Clerk of Courts to testify as to Appellant's convictions. (T. 52). Appellant objected because "given the procedural posture it would be I can call him first to set my case. That's why I subpoenaed him in the first place." (T. 52). He objected to the State, "getting the first bite of the apple." Id.
 {¶ 44} Upon the record before us, we find Appellant's failure to comply with procedural rules demonstrated his desire to utilize the House Bill 180 hearing to once again challenge his 1992 convictions and sentence. We find the trial court did not err when it required Appellant to proceed with appointed counsel and Appellant suffered no prejudice therefrom.
 {¶ 45} Appellant's first Assignment of Error is overruled.
 II. {¶ 46} Appellant argues in his second Assignment of Error that the State failed to prove by clear and convincing evidence that Appellant should be classified as a sexual predator. We disagree.
 {¶ 47} In State v. Cook (1998), 83 Ohio St.3d 404, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will *Page 12 
review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. We find this to be the applicable standard as the Cook court addressed a similar challenge under a manifest weight standard of review. See,Cook at 426.
 {¶ 48} R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(2) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 49} "(2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 50} "(a) The offender's age;
 {¶ 51} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses, including, but not limited to, all sexual offense;
 {¶ 52} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 53} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 54} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 55} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the *Page 13 
prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 56} "(g) Any mental illness or mental disability of the offender;
 {¶ 57} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 58} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 59} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 60} In this matter, the female victims were ages sixteen and twenty-four at the time of the offenses; Appellant was thirty-eight. Appellant lured his victims to come with him voluntarily and the victims found themselves "ensnarled in this person's web" for a considerable length of time. Appellant forced both victims to smoke crack cocaine during the commission of the offenses. The trial court found Appellant displayed cruelty to his victims. Appellant forced them to recreate poses found in a Playboy magazine. He bound the arms of both his victims while he sexually assaulted them. To force his victims to perform sexual acts on him, Appellant held a pair of scissors to the neck and chest of the sixteen-year-old victim, cutting her chest with the scissors, and held a knife to the throat of the twenty-four-year-old victim. *Page 14 
 {¶ 61} Upon review, we find the trial court considered the elements set forth in R.C. 2950.09(B)(2) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the classification hearing.
 {¶ 62} Appellant's second Assignment of Error is overruled.
 III. {¶ 63} In Appellant's final Assignment of Error, he argues the trial court lacked jurisdiction over this matter. We find this argument is yet another attempt by Appellant to challenge his sentence and conviction for the above-mentioned crimes.
 {¶ 64} As we have previously stated,
 {¶ 65} "`Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising or litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised . . . on an appeal from that judgment.' State v. Perry (1967),10 Ohio St.2d 175, 180, 226 N.E.2d 104. The trial court's third and final nunc pro tunc sentencing entry in this case, issued July 9, 1998, has previously withstood various legal challenges by appellant. We find his present arguments barred by the doctrine of res judicata." State v.Norris, 5th Dist. No. 2006CA00384, 2007-Ohio-2467, ¶ 17.
 {¶ 66} Appellant's third Assignment of Error is overruled. *Page 15 
 {¶ 67} The judgment of the Stark County Court of Common Pleas is affirmed.
 By: Delaney, J. Hoffman, P.J. and Gwin, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1