[Cite as *State v. Snyder*, 2012-Ohio-3069.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 13-11-37

    v.

STEVEN R. SNYDER,                  **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11 CR 0083

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: July 2, 2012

APPEARANCES:

    *Gene P. Murray* for Appellant

    *Derek W. DeVine and Rhonda L. Best* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Steven R. Snyder ("Snyder"), appeals the judgment entry of the Seneca Court County Court of Common Pleas, sentencing him to three consecutive, near-maximum sentences after he pled guilty to child-pornography related charges. On appeal, Snyder contends that the trial court erred in sentencing him because (1) the offenses were allied offenses of similar import and should have merged, (2) the trial court should have sentenced him under the new H.B. 86 sentencing guidelines, and (3) the trial court should not have sentenced him to more than the minimum sentences based upon his record. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On June 16, 2011, the Seneca County Grand Jury returned a three-count indictment alleging Snyder committed the following offenses: Court One, illegal use of a minor in nudity oriented material in violation of R.C. 2907.323(A)(1),(B), a felony of the second degree; Count Two, pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5),(C), a felony of the fourth degree; and, Count Three, tampering with evidence in violation of 2921.12(A)(1),(B), a felony of the third degree.

{¶3} The indictment stems from an incident that occurred in April 2011, when Snyder was staying with his cousin's family in Tiffin while waiting to attend his National Guard drill. The cousin asked Snyder to watch his two young

children for 5-10 minutes while he ran an errand. Sometime thereafter, the cousin's wife noticed Snyder's cell phone and began to scroll through the photographs looking for pictures of Snyder's family and young son. The cousin's wife was shocked and upset when she came across five or six nude pictures of their two-year old daughter, focused directly on the vaginal area. The wife shared the pictures with her husband (Snyder's cousin), who was also upset and in disbelief. Just before they were about to ask Snyder about the pictures, they saw him doing something with his phone. When they confronted him about the photos, he denied taking them, and when they checked the phone, the photos were gone.

{¶4} During the hours following the discovery of the photographs, the parents of the young child and other family members had conversations with Snyder and he eventually admitted that he had taken the photographs of the child, supposedly while changing her diaper. He admitted that he had been addicted to adult pornography and that it had evolved to an interest in child pornography. The authorities were notified and a search warrant was obtained to search Snyder's residence, his cell phone, and his computer. The search of the computer indicated that it had been "cleaned up." However, 26 images of child pornography were found on the computer.

{¶5} Snyder originally entered a plea of not guilty and filed a motion to suppress. However, after plea negotiations, he agreed to enter guilty pleas to Count Two, pandering, and Count Three, tampering with evidence. He also agreed to plead guilty to the lesser included charge of *attempted* illegal use of a minor in nudity-oriented material, R.C. 2907.323(A)(1),(B), a felony of the third degree. On October 5, 2011, he appeared at a change of plea hearing and entered guilty pleas as agreed, along with a written plea agreement.[1] The written plea agreement stated that there was no sentencing recommendation and that Snyder was entering the pleas with the understanding that "the Parties have no agreed sentence recommendation and will argue the appropriate punishment at the time of sentencing." (Oct. 7, 2011 Plea of Guilty, p. 3) The plea document stated that, for Counts One and Three, the maximum penalty could be a prison term of 5 years (with 0 years mandatory), and that the maximum penalty for Count Two could be 18 months (with 0 years mandatory). No other information concerning the potential range of prison terms was provided. He also acknowledged he was subject to fines, restitution and postrelease control, and he agreed to the voluntary forfeiture of the laptop computer. A pre-sentence investigative report was ordered and a sentencing date was set for November 8, 2011.

---

[1] No transcript of the plea hearing was ordered.

{¶6} At the sentencing hearing, the State requested that Snyder be sentenced to three consecutive prison terms of 5 years, 17 months, and 3 years, for a total prison term of 9 years and 5 months. (Sent. Tr., p. 16) The State argued that these sentences were appropriate because the child and her parents had been greatly affected by this; because of the potential mental injury and future psychological harm to the victim if she should become aware of what happened to her; because the offender's relationship facilitated the offense; and because the public needs to be protected from the "continued progression" of his behavior, starting with his admitted addiction to adult pornography, escalating to child pornography, and then the progression to actually taking the photographs himself. (Sent. Tr., pp. 14-15) The State was also concerned about the well-being of Snyder's own child (a 2-year old son), and the fact that, because Snyder was a pilot, "numerous children throughout his travels could potentially be harmed by his behavior should it continue to progress." (Sent. Tr., p. 16) The trial court also heard from the victim's advocate, who spoke on behalf of the victim's parents, who stated that their main concern at this point "is the well-being of every other kid in their community." (Sent. Tr., p. 17)

{¶7} Defense counsel spoke on behalf of Snyder, requesting leniency, stating how Snyder felt genuine remorse and was sorry for the victim and the victim's family, and the hurt he had caused to his own family. His counsel

explained that Snyder recognized that he had a problem and has sought help in counseling and was willing to continue with counseling. Snyder, who was 27, had no juvenile or adult offenses whatsoever, other than one speeding ticket. He graduated from Bowling Green State University with a 3.6 average, had been a member of the Ohio National Guard for 9 years, was honorably discharged from the U.S. Air Force where he had served admirably in two tours of duty in Afghanistan, and he earned the Air Force Achievement Medal for exceptional performance. He had comported himself in an exemplary fashion while on bond, had no contact with the victim's family, and had met all appointments, even though he was traveling around the country for his job as a charter pilot. His employer was willing to allow him to retain his employment if he was granted community control. Snyder had the support of his family, who were in court with him, and numerous others who wrote letters to the court on his behalf.

{¶8} Snyder also spoke and expressed great remorse, apologized to all concerned, accepted responsibility for his actions, and indicated that he would continue to get help for his problem. (Sent. Tr., pp. 25-26) He stated that with continued therapy, he was sure nothing like this would ever happen again, and that he would never do anything to harm a child. (*Id.*)

{¶9} The trial court acknowledged that Snyder had "a lot going for [him]" based upon what was said in the letters, his education, and his military service.

(Sent. Tr., p. 34) The trial court also noted that his ORAS (Ohio Risk Assessment System) Score was one of the lowest that the court had ever seen.[2] (*Id.*) However, the trial court stated that the crimes committed were "heinous" and he must be punished for what he did. (*Id.*) The trial court sentenced Snyder to 4 years in prison for the attempted illegal use of a minor in nudity-oriented material, to 17 months in prison on the pandering obscenity count, and to one year in prison on the tampering with evidence count. The trial court ordered that the sentences be served consecutively, for a total of 6 years, 5 months in prison, and further ordered that Snyder should not be considered for IPP placement. Defendant was also required to register as a Tier II sex offender every 180 days, for 25 years, and would be subject to community control upon his release.

{¶10} It is from this judgment that Snyder now appeals, raising the following three assignments of error for our review.

### First Assignment of Error

**In an abuse of its discretion, the trial court erred by imposing three consecutive sentences for the three counts, as said three offenses (counts) were allied offenses of similar import, and thus should have been merged into one offense for purposes of sentencing.**

---

[2] Based on the offender's offense level, ORAS score, questionnaire, and available collateral information, the recommendation in the pre-sentence investigation report was for 6 months in jail, with 3 months suspended; five years of community control with no contact with the victim or victim's family; and assessment for sex offender treatment plus following any all treatment recommendations. (Pre-Sent. Inv., p. 22) The report also found that *none* of the recidivism factors under R.C. 2929.12(D) were applicable, and that three of the five factors under R.C. 2929.12(E) indicating that *recidivism was unlikely* were applicable.

**Second Assignment of Error**

**In an abuse of its discretion, the trial court erred by imposing a four (4) years prison term on Count One, a felony of the third degree, when the court should have sentenced [Snyder] under the recently-enacted House Bill 86, and thus, under R.C. 2929.14(A)(3)(b), about which the trial court's disregard of same is respectfully submitted as not being an option, and therefore not within the discretion of the trial court.**

**Third Assignment of Error**

**In an abuse of its discretion, the trial court erred by imposing greater than the minimum sentences, and/or greater than the minimum sentence ranges, on Counts One and Two, as [Snyder] had no prior lifetime felonies whatsoever, and indeed had no prior criminal history whatsoever, and was and is apologetic and remorseful, and was obtaining appropriate counseling before the time of sentencing.**

*First Assignment of Error – Crimes of similar import*

{¶11} In the first assignment of error, Snyder contends that he should not have been convicted of the multiple counts because they were allied offenses of similar import in that they were all related offenses involving nudity-oriented material involving a minor. He argues that the three sentences must merge and he should have only been subject to a single sentence.

{¶12} Ohio's statute concerning multiple counts, RC 2941.25, provides the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

-8-

(B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or *where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each*, the indictment or information may contain counts for all such offenses, and *the defendant may be convicted of all of them.*

(Emphasis added.)  R.C. 2941.25.

{¶13} The Ohio Supreme Court has recently clarified the application of R.C. 2941.25 in determining whether offenses are allied offenses of similar import in its decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.  In so doing, the Supreme Court overruled *State v. Rance*, 85 Ohio St.3d 632, 1999–Ohio–291, "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25.  [Now w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson* at ¶ 44.

{¶14} The Ohio Supreme Court stated that, under R.C. 2941.25, a court must determine prior to sentencing whether the offenses were committed by the same conduct.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.'
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

*Johnson*, 2010–Ohio–6314, at ¶ 48–50 (citations omitted; emphasis in original).

{¶15} The three offenses in this case are not allied offenses of similar import because Snyder's conduct and animus in committing each of the offenses was separate and distinct, and the offenses occurred at three different times and locations. Snyder took photographs of a young child in a state of nudity with his cell phone; he later removed those photographs of the child from his cell phone when he realized that his actions had been discovered; and, he also possessed images of child pornography on his laptop computer, which were not related to the photographs of the child he took with his cell phone.

{¶16} Each of these actions was separate and distinct, involving a separate animus, and each offense contained different elements required for conviction. The first assignment of error is overruled.

*Second Assignment of Error – Applicability of new sentencing guidelines*

{¶17} Snyder submits that the trial court erred in sentencing him because the ranges of imprisonment reflected in the penalties imposed reflect those that were effective under the *old* statutory sentencing regulations. He asserts that

House Bill 86 (or, "H.B. 86") changed the sentences for many offenses and that he should have been sentenced under the statutes that were currently in effect at the time of his sentencing.

{¶18} The General Assembly expressly provided in Section 4 of H.B. 86 when the amendments were to be applicable: "The amendments * * * apply to a person who commits an offense specified *or penalized* under those sections on or after the effective date of this section and to a person to whom division (B) of section 1.58(B) of the Revised Code makes the amendments applicable." (Emphasis added.) *State v. Jones*, 1st Dist. No. C-110603, 2012-Ohio-2075, ¶ 14. R.C. 1.58(B) provides:

> If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

R.C. 1.58(B).

{¶19} The statutory amendments providing new sentencing guidelines were effective as of September 30, 2011. Snyder signed his plea agreement on October 7, 2011, the sentencing hearing was held on November 8, 2011, and the Judgment Entry of Sentence was filed November 16, 2011. Therefore, under the clearly stated requirements of the statute, Snyder should have been sentenced under the new sentencing guidelines, and he should have received the benefit of any reduced sentencing parameters in the amended statutes. The State's argument that he

should be sentenced under the terms of the statutes as they were when he committed the offenses is contrary to the specified terms of the statute.

{¶20} Snyder pled guilty to two third-degree felonies, and one fourth-degree felony. House Bill 86 amended R.C. 2929.14(A)(3) to change the range of possible prison terms for certain third-degree felonies. R.C. 2929.14(A)(3)(b) decreases the range of penalties for most felonies of the third degree to 9, 12, 18, 24, 30, or 36 months.[3] For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4). The length of prison terms for felonies of the fourth and fifth degree were not modified; however, the newly enacted R.C. 2929.13(B)(1)(a) established a preference for, and in certain conditions, a presumption of, community control sanctions for fourth and fifth degree felonies, subject to certain parameters. *See* R.C. 2929.13(B)(1)(a).

{¶21} The trial court sentenced Snyder to four years in prison for the third degree felony in Count One. This was outside of the maximum allowable penalty of thirty-six months pursuant to R.C. 2929.14(A)(3). Because this sentence is outside the permissible statutory range, it is clearly and convincingly contrary to

---

[3] R.C. 2929.14(A)(3)(a) does maintain the maximum 60–month penalty for the following offenses: aggravated vehicular homicide, aggravated vehicular assault, vehicular assault, sexual battery, or unlawful sexual conduct with a minor (R.C. 2907.04), gross sexual imposition (R.C. 2907.05), or robbery or burglary if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more aggravated-robbery, robbery, aggravated-burglary, or burglary offenses. The statute specifically states what offenses are subject to the increased penalties, and only those offenses that are listed fall under that section of the statute. The State's argument that we should add additional offenses to this section of the statute because they are somehow "related" to the listed offenses is without merit.

law and cannot stand. Although the sentences for the other two counts are still within the statutory ranges, this Court cannot determine whether or not they, too, were imposed utilizing the old, rather than the new, applicable statutory scheme.

{¶22} Therefore, Snyder's second assignment of error is sustained. His sentence is contrary to law and is vacated. The matter is remanded to the trial court for resentencing under the applicable statutes, as modified by House Bill 86, that were in effect at the time of his sentencing.

*Third Assignment of Error – Non-minimum, consecutive sentences not warranted*

{¶23} In the final assignment of error, Snyder contends that the trial court erred in imposing greater than the minimum sentences, and consecutive sentences, considering that he had no prior criminal history, he was remorseful, and was obtaining the appropriate counseling.

{¶24} One of the noteworthy changes to the felony sentencing laws concerns the purposes of felony sentencing, as stated in R.C. 2929.11(A). The two primary purposes of felony sentencing remain "to protect the public from future crime by the offender and others and to punish the offender * * *." *Id.* However, these goals are to be effected "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *Id.* This mandate to utilize the

minimum sanctions the court determines necessary is a new provision, added by H.B. 86.

{¶25} As of September 30, 2011, the effective date of House Bill 86, a trial court must engage in a three-step analysis in order to impose consecutive sentences. R.C. 2929.14(C)(4). First, the trial court must find that consecutive sentencing is necessary to protect the public from future crime *or* to punish the offender. *Id*. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct *and* to the danger the offender poses to the public. *Id*. Last, the trial court must find that one of the following applies: (1) the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or was under post-release control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or, (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.

{¶26} Because Snyder's sentence has been vacated and this matter is being remanded for resentencing under the new guidelines, this assignment of error is currently moot. As instructed above, the trial court must resentence Snyder, taking into account the appropriate factors as they are intended to be applied under the new statutory requirements, and making certain that they are based upon actual facts that are in the record, and not merely unsupported conjecture about future possibilities.

{¶27} The third assignment of error has been rendered moot, and need not be addressed.

{¶28} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued as to the first assignment of error, we affirm the judgment of the trial court pertaining to the issue of allied offenses. However, having found error in the trial court's sentencing of Appellant, we vacate the trial court's sentence and remand the matter to the trial court for resentencing under the correct guidelines as set forth in the statutes as they were modified by House Bill 86.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**

-15-

Case No. 13-11-37