[Cite as *State v. Snyder*, 2013-Ohio-2046.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 13-12-38

    v.

STEVEN R. SNYDER,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11 CR 0083

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: May 20, 2013

APPEARANCES:

    *Susan J. Moran* for Appellant

    *Derek W. DeVine and Rhonda L. Best* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Steven R. Snyder, appeals the judgment of the Court of Common Pleas of Seneca County sentencing him to a total prison term of 53 months for his convictions on attempted illegal use of a minor in nudity-oriented material, pandering obscenity involving a minor, and tampering with evidence. On appeal, Snyder argues that the trial court erred by: (1) imposing a sentence that was contrary to law; (2) improperly considering the purposes and principles of felony sentencing; (3) prohibiting him from participating in certain prison programs; (4) imposing consecutive sentences; (5) misinterpreting his Ohio Risk Assessment System ("ORAS") score; and (6) failing to merge his conviction for attempted illegal use of a minor in nudity-oriented material with his conviction for pandering obscenity involving a minor for the purposes of sentencing. Snyder also claims that the State engaged in prosecutorial misconduct by referring to purportedly unsubstantiated allegations at the sentencing hearing. For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

{¶2} On June 15, 2011, the Seneca County Grand Jury indicted Snyder on three counts. Count I was for illegal use of a minor in nudity-oriented materials in violation of R.C. 2907.323(A)(1), (B), a felony of the second degree. Count II was for pandering obscenity involving a minor in violation of R.C.

2907.321(A)(5), (C), a felony of the fourth degree. Count III was for tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a felony of the third degree.

{¶3} The indictment arose from Snyder's activities on April 6, 2011. At that time, he was staying at his cousin's residence. When Snyder's cousin left to run an errand, Snyder was left to supervise his cousin's two-year old daughter. While supervising the child, Snyder changed her diaper and as he did so, he took several pictures of the child's naked body on his cellular phone. Shortly thereafter, the wife of Snyder's cousin discovered the pictures on Snyder's phone and reported them to the police.

{¶4} The child was taken to the hospital so that she could be examined for the possibility of sexual assault. Meanwhile, the police arrested Snyder and executed a search in which they seized his laptop computer and phone. They were unable to recover any nude pictures of the child from Snyder's phone. However, a forensic analysis of Snyder's computer revealed several files containing child pornography. It also showed that several other files containing pornographic images had been deleted.

{¶5} On October 5, 2011, Count I was amended to attempted illegal use of a minor in nudity-oriented material, a felony of the third degree. Snyder pleaded guilty to Count I, as amended, and Counts II and III, as originally indicted. In

November 2011, the trial court sentenced him to serve a total prison term of 77 months.

{¶6} Snyder appealed the trial court's sentence to this court. We affirmed in part and reversed in part the trial court's original order. We found that the trial court did not err in failing to merge Snyder's convictions for the purposes of sentencing. *State v. Snyder*, 3d Dist. No. 13-11-37, 2012-Ohio-3069, ¶ 16 ("*Snyder I*"). However, we found that the trial court erred in failing to apply House Bill 86 ("H.B. 86") when sentencing Snyder. *Id*. at ¶ 22. Consequently, we vacated Snyder's original sentence and remanded this matter for de novo sentencing in accord with H.B. 86. *Id*. at ¶ 28. We further instructed the trial court to resentence Snyder "based upon actual facts that are in the record, and not merely unsupported conjecture about future possibilities." *Id*. at ¶ 26.

{¶7} On remand, the trial court conducted a sentencing hearing on August 23, 2012. According to the Presentence Investigation Report ("PSIR") offered into the record, Snyder has no previous criminal convictions. The PSIR lists Snyder's ORAS score as indicating a low risk. But, it also includes a professional override of the low-risk indication and suggests that Snyder's actual risk level is "very high due to the nature of the offense." (PSIR, p. 17). Further, the PSIR found that "[t]here was no physical harm to [the victim] expected or caused." (*Id*. at p. 19).

{¶8} At the sentencing hearing, the State indicated that one of the pictures taken by Snyder showed the victim's vagina spread open and suggested that Snyder touched it. Additionally, the State represented that the incident left a "devastating impact" on the victim, who fought her mother when her diapers were changed in the days following the incident. Tr., p. 5. Further, the State referred to the emotional drain that the victim's parents suffered from Snyder's actions.

{¶9} The State also offered two victim impact statements into the record. The victim's mother completed the first statement, which prompted her to describe the physical and psychological effects of Snyder's crimes. In response to both prompts, the mother indicated that the crime had caused no physical or psychological effects. The second victim impact statement did not refer to any physical or psychological harm suffered by the victim.

{¶10} After Snyder offered his own statement of remorse at the hearing, the trial court discussed its consideration of the record:

> The Court has considered the record, has considered the oral statements made today, has reviewed the two victim impact statements, has again reviewed the presentence investigation report prepared in this case.
> The Court has considered the principals [sic] and purposes of felony sentencing under Revised Code Section 2929.11.
> The Court will be reviewing for the record and balancing the seriousness and recidivism factors under Ohio Revised Code Section 2929.12.

\* \* \*

The Court has looked at and reviewed carefully the presentence investigation report. And on page 17, while it shows an ORAS score of eight, risk of, or below there is a professional override indicated that says, "Yes, very high due to the nature of the offense" on page 17.

The Court has looked at the seriousness factors where two of them have been marked by the presentence report under [R.C.] 2929.12(B): "Injury to victim was worsened by the physical or mental condition or age of the victim and the offender's relationship with the victim facilitated the offense."

The less serious offense considerations under [R.C.] 2929.12(C) was [sic], "there was no physical harm to persons or property expected or caused" marked.

Under "recidivism factors" under [R.C.] 2929.12(D) none of them are marked.

\* \* \*

The Court has looked at the recommendation in the presentence investigation report and is of the opinion there should be a professional override based on that recommendation. Tr., p. 17-19.

Based on the consideration of the above items, the trial court found that "a prison term is consistent with the purposes and principals [sic] of felony sentencing \* \* \* and that the shortest prison term \* \* \* will not adequately protect the public from future crime by [Snyder] or others."[1] Tr., p. 24.

{¶11} The trial court then determined that consecutive sentences were appropriate:

---

[1] The trial court apparently misspoke at the hearing by stating that "the shortest prison term will not demean the seriousness of [Snyder's] conduct \* \* \*." Tr., p. 24. In its judgment entry of sentencing, the trial court corrected this oversight by stating that "the shortest prison term will demean the seriousness of [Snyder's] conduct \* \* \*." (Docket No. 56, p. 3).

After consideration of everything, the victim impact statements, the offenses convicted, the fact involving the convictions as related by the statements of the prosecution, and their oral statements to the Court, after a careful review of 22 pages of presentence investigation report, and all other matters of record in this case, this Court continues to find that consecutive sentences are necessary to protect the public from future crime and to punish, even though it required "or" the Court finds to punish [Snyder].

The Court also finds that consecutive sentences are not disproportionate to the seriousness of [Snyder's] conduct and to the danger to [sic] the offender poses to the public.

The Court finds that at least two of the multiple offenses, Counts One and Two were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of [Snyder's] conduct, Revised Code Section 2929.14(C)(4). Tr., p. 25-26.

{¶12} Accordingly, the trial court sentenced Snyder to "serve a stated prison term of 35 months * * * on Count One, a stated prison term of 17 months * * * on Count Two, and a stated prison term of 12 months * * * on Count Three." Tr., p. 27. Further, the sentences for Counts I and II were ordered to be served consecutively to each other while Snyder's sentence for Count III was to be served concurrently with his terms for Counts I and II.

{¶13} The trial court issued a judgment entry of re-sentence on September 19, 2012 in which it journalized the above findings. The judgment entry also indicated that the trial court imposed the same sentences for Counts II and III as it had at the sentencing hearing. However, instead of imposing a 35-month prison term for Count I, the trial court's judgment entry imposed a 36-month prison term

for Count I.  Further, the trial court ordered that Snyder not have any contact with the "victims in this case."  (Docket No. 56, p. 8).

{¶14} Snyder timely appealed from this judgment, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED BY IMPOSING A THIRTY-FIVE MONTH SENTENCE WHICH WAS CONTRARY TO LAW.**

### Assignment of Error No. II

**THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A PRISON SENTENCE CONTRARY TO R.C. 2929.14 AND THE PURPOSES AND PRINCIPLES OF THE FELONY SENTENCING GUIDELINES.**

### Assignment of Error No. III

**THE TRIAL COURT ERRED WHEN IT PROHIBITED THE APPELLANT FROM PARTICIPATING IN AVAILABLE PRISON PROGRAMS.**

### Assignment of Error No. IV

**THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES.**

### Assignment of Error No. V

**THE TRIAL COURT ERRED IN INTERPRETING THE APPELLANT'S ORAS SCORE.**

*Assignment of Error No. VI*

**THE PROSECUTOR COMMITTED MISCONDUCT BY ARGUING UNSUBSTANTIATED ALLEGATIONS AT SENTENCING DEPRIVING THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS.**

*Assignment of Error No. VII*

**THE TRIAL COURT ERRED IN CONVICTING AND CONSECUTIVELY SENTENCING ALLIED OFFENSES OF SIMILAR IMPORT WHICH RESULTED IN CUMULATIVE PUNISHMENTS VIOLATING THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS APPLIED TO THE STATES THROUGH THE FOURTEENTH AMENDMENT, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.**

{¶15} Due to the nature of the assignments of error, we elect to address them out of order.

{¶16} Before turning to the merits of Snyder's assignments of error, we must address the proper scope of the record before us. Snyder has sought to supplement the record with materials purportedly provided to him during discovery. App.R. 9(A)(1) limits the record on appeal to "[t]he original papers and exhibits thereto filed in the trial court, the transcript of the proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." Since the materials offered by Snyder are not within the auspices of App.R. 9, they are not properly before us and we decline to consider them when addressing Snyder's arguments. *See State*

*v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."); *State v. Zhovner*, 3d Dist. No. 2-12-13, 2013-Ohio-749, ¶ 12 (finding that materials attached to the appellate brief but not filed with the trial court were not properly before the reviewing court); *State v. Hartley*, 3d Dist. No. 14-11-29, 2012-Ohio-4108, ¶ 19 (same); *Deitz v. Deitz*, 3d Dist. No. 14-11-06, 2012-Ohio-130, ¶ 8 (same).

{¶17} Additionally, Snyder has attached a variety of "exhibits" to his appellate brief. These exhibits are not included in the appellate record and consequently we also decline to consider them.

*Assignment of Error No. I*

{¶18} In his first assignment of error, Snyder asserts that the trial court handed down a sentence for his conviction on Count I that was contrary to law. We agree.

{¶19} A reviewing court must conduct a meaningful review of the trial court's imposed sentence. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8. Such review allows the court to "modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the

sentence is otherwise contrary to law." *Id.* Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶ 16.

{¶20} Under Crim.R. 43(A)(1), criminal defendants are required to be physically present at "every state of the criminal proceeding and trial," including "imposition of sentence." This right is not merely procedural in nature but implicates due process concerns. *See State v. Railey*, 1st Dist. No. C-120029, 2012-Ohio-4233, ¶ 20 ("A defendant thus has a due-process right, embodied in Crim.R. 43(A), to be present when the court imposes sentence, and a trial court cannot abrogate a defendant's due-process rights by sentencing the defendant in his absence."). As a result of the physical presence requirement, "the trial court errs when its judgment entry of sentence differs from the sentence that is announced at the sentencing hearing in the defendant's presence." *State v. Kovach*, 7th Dist. No. 08-MA-15, 2009-Ohio-2892, ¶ 28, citing *State v. Jordan*, 10th Dist. No. 05AP-1330, 2006-Ohio-5208, ¶ 48. Further, such an "error

requires a remand for re-sentencing." *Jordan* at ¶ 48; *see also State v. Hunter*, 10th Dist. No. 10AP-1005, 2011-Ohio-3654, ¶ 22; *State v. Quinones*, 8th Dist. No. 91632, 2009-Ohio-2718, ¶ 68; *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, ¶ 71 (2d Dist.).

{¶21} Here, the trial court orally imposed a 35-month prison sentence for Snyder's conviction on Count I, yet it issued a judgment entry that imposed a 36-month prison sentence. This dichotomy between the trial court's orally-imposed sentence and its judgment entry is plainly contrary to the dictates of Crim.R. 43 and renders the trial court's sentence on Count I contrary to law.[2] *See Railey* at ¶ 22 (finding that sentence was contrary to law where judgment entry imposed 18-month sentence while the trial court orally imposed a 12-month sentence at the sentencing hearing). As such, Snyder's sentence on Count I is vacated and we remand this matter for resentencing on Count I.

{¶22} Accordingly, we sustain Snyder's first assignment of error.

*Assignments of Error Nos. II & V*

{¶23} In his second assignment of error, Snyder argues that the trial court failed to properly consider the purposes and principles of felony sentencing when sentencing him on Counts I, II, and III. In his fifth assignment of error, Snyder contends that the trial court inappropriately relied on the professional override of

---

[2] The trial court's oral sentence was also improper in light of R.C. 2929.14(A)(3)(b)'s command that the prison term for third degree felony convictions "shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months."

Snyder's ORAS score when sentencing him. Since we have vacated Snyder's sentence on Count I, the second assignment of error is moot insofar as it relates to that sentence. As such, we decline from addressing the merits of Snyder's second assignment of error regarding his sentence on Count I. *See* App.R. 12(A)(1)(c). However, as to Snyder's sentences on Counts II and III and the trial court's use of the override of Snyder's ORAS score, we disagree with Snyder's contentions.[3]

*Sentencing Factors*

{¶24} R.C. Chapter 2929 governs sentencing. R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* Meanwhile, R.C. 2929.11(B) states that felony sentences must be both "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and consistent with sentences imposed in similar cases.

---

[3] Our finding that Snyder's sentence on Count I is contrary to law does not render this entire assignment of error moot. *See State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, paragraph three of the syllabus ("An appellate court may modify, remand, or vacate a sentence for an offense that is appealed by the defendant and may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense.").

**{¶25}** In accordance with these principles, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A). However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8. This matter implicates the following provisions of R.C. 2929.12(B), (C), and (E):

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> * * *
>
> (6) The offender's relationship with the victim facilitated the offense:
>
> (C) The sentencing court shall consider all of the following that apply regarding the offense, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
>
> * * *
>
> In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
>
> * * *

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

Prior to committing the offense, the offender had not been adjudicated a delinquent child.

Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

Prior to committing the offense, the offender had led a law abiding life for a significant number of years.

{¶26} In performing its review of the statutory factors, the trial court found that Snyder's offenses were more serious than other similar crimes. A review of the record supports this finding. Specifically, R.C. 2929.12(B)(6) is satisfied because Snyder's status as the victim's cousin and babysitter at the time of the incident provided the opportunity for him to photograph the victim.[4] Further, the trial court properly considered the young age of the victim when sentencing Snyder. *See, e.g.*, *State v. Justice*, 6th Dist. No. OT-01-042, 2002-Ohio-3146, ¶ 26 (noting that the victim's young age supported the trial court's imposition of a 17-month sentence).

{¶27} The trial court also found that Snyder presented a high risk to the community. Although several of the statutory factors regarding recidivism

---

[4] The trial court also found that R.C. 2929.12(B)(1) applies based on the age of the victim and the purported mental distress she suffered as a result. There is no evidence in the record to support the trial court's finding of mental distress, as discussed in our resolution of Snyder's fourth assignment of error below. Regardless of whether R.C. 2929.12(B)(1) applies, the trial court still properly relied on R.C. 2929.12(B)(6) and the child's young age at the time of the incident, which can be properly considered when sentencing criminal defendants.

indicate that Snyder is unlikely to recidivate, the trial court was within its discretion to consider "any other relevant factors" as to the likelihood that Snyder would engage in this type of behavior again. R.C. 2929.12(E). The trial court gave weight to the PSIR's recommendation that Snyder be considered a "very high risk" despite his low ORAS score. (PSIR, p. 17). Giving such weight to the recommendation was proper and supports the trial court's finding that Snyder was likely to recidivate and presented a high risk to the community. *See State v. Daniels*, 10th Dist. No. 97AP-06-830 (Feb. 24, 1998) (noting the "high potential of recidivism among sex offenders whose crimes involve the exploitation of young children").

{¶28} On appeal, Snyder complains that the professional override of the ORAS score was inappropriate and claims that the trial court erred in considering it. But, the record only includes the PSIR's recommendation of a professional override and not any forms or manuals that were used to develop the recommendation. Since the record produces no basis for finding that the professional override was improper, we are unable to find fault in the trial court's reliance on it.

{¶29} In light of the trial court's extensive consideration of the required statutory factors and the evidence supporting its findings regarding the seriousness of Snyder's offenses and his likelihood of recidivism, we find that

there is not clear and convincing evidence to disturb the trial court's sentences on Counts II and III. Further, we find that there is no evidence in the record to show that the trial court improperly utilized Snyder's ORAS score.

{¶30} Accordingly, we overrule in part Snyder's second assignment of error and his fifth assignment of error in its entirety.

*Assignment of Error No. III*

{¶31} In his third assignment of error, Snyder argues that the trial court erred in precluding him from participating in shock incarceration or an intensive program prison without stating its reasons for the preclusion. We disagree.

{¶32} R.C. 5120.031 and 5120.032 establish alternative prison arrangements for certain offenders. Under R.C. 5120.032(B)(2)(c), an offender serving a prison term for a felony of the third, fourth, or fifth degree that is a sex offense is ineligible for the intensive program prison. Moreover, if an offender is ineligible for the intensive program prison, he is likewise ineligible for shock incarceration. R.C. 5120.031(A)(4).

{¶33} R.C. 2929.19(D) provides that "[i]f the [trial] court recommends or disapproves placement [in shock treatment or the intensive program prison], it shall make a finding that gives its reasons for its recommendation or disapproval." There is a split of authority regarding R.C. 2929.19(D)'s finding requirement. The Fifth, Tenth, Eleventh, and Twelfth Districts have held that

R.C. 2929.19(D) is satisfied even though the trial court fails to explicitly state the reasons for its disapproval of shock treatment or intensive program prison so long as the record includes sufficient facts to support the trial court's disapproval. *E.g.*, *State v. Tucker*, 12th Dist. No. 2011-04-067, 2012-Ohio-50, ¶ 25; *State v. Lowery*, 11th Dist. No. CA 2007-T-0039, 2007-Ohio-6734, ¶ 16; *State v. Jackson*, 5th Dist. Nos. 05 CA 46, 05 CA 47, 2006-Ohio-3994, ¶ 14-15; *State v. Sears*, 10th Dist. No. 02AP-1343, 2003-Ohio-2696, ¶ 32. Conversely, the Second District has rejected this view and has instead required that trial courts explicitly provide their reasons for disapproval where the offender was convicted of a type of felony that rendered him eligible for the alternative programs. *See State v. Blessing*, 2d Dist. No. 2011 CA 56, 2013-Ohio-392, ¶ 48 (vacating trial court's disapproval of shock incarceration and intensive program prison where the offender was convicted of third and fifth degree felonies and eligible for the alternative programs, but the trial court did not list its reasons for the disapproval); *State v. Allender*, 2d Dist. No. 24864, 2012-Ohio-2963, ¶ 22 ("[R.C. 2929.19(D)'s] requirement, imposed on the trial court, is not satisfied by an appellate court finding in the record reasons that the trial court could have given, or might have given, for disapproval."). However, the Second District has not required that trial courts give explicit reasons for their disapproval where the offender has committed a type of felony that manifestly renders him ineligible for

the alternative programs. *E.g.*, *State v. Lewis*, 2d Dist. No. 2012-CA-31, 2013-Ohio-809, ¶ 19; *State v. Barron*, 2d Dist. Nos. 25059, 25074, 2012-Ohio-5787, ¶ 16; *State v. Walz*, 2d Dist. No. 23783, 2012-Ohio-4627, ¶ 26. According to the Second District, trial courts' failure to give explicit reasons in this circumstance is "necessarily harmless error." *State v. DeWitt*, 2d Dist. No. 24437, 2012-Ohio-635, ¶ 23.

{¶34} Here, the trial court failed to explicitly state why it found that Snyder was not amenable to shock incarceration or intensive program prison. In addressing this failure, we need not resolve the foregoing split of authority because it does not rise to the level of reversible error under either view. While the trial court did not strictly comply with the dictates of R.C. 2929.19(D), the error was harmless.[5] Snyder was convicted of felony sex offenses that plainly render him ineligible for alternative prison programs. In light of Snyder's manifest ineligibility, the trial court's failure to explicitly state its reasons for its disapproval of alternative prison arrangements does not require a reversal.

{¶35} Accordingly, we overrule Snyder's third assignment of error.

---

[5] The better practice is for the trial court to list its reasons for disapproval, regardless of the circumstances giving rise to it.

*Assignment of Error No. IV*

**{¶36}** In his fourth assignment of error, Snyder claims that the trial court erred in ordering that his sentences on Counts I and II be served consecutively.[6] We agree.

**{¶37}** R.C. 2929.14(C) controls the imposition of consecutive sentences. It provides, in pertinent part, as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following:
>
> * * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of the officer's conduct.

**{¶38}** Here, the trial court ordered that Snyder serve consecutive sentences based on its finding that his offenses caused great or unusual harm. However, a review of the record reveals no evidence to support such a finding. Indeed, the

---

[6] Our resolution of the first assignment of error and decision to vacate Snyder's sentence on Count I does not render this assignment of error moot. *See State v. Redd*, 8th Dist. No. 98064, 2012-Ohio-5417, ¶ 19 (finding that consecutive sentences were properly imposed even though the trial court's sentence on one of the offenses was vacated).

record directly contradicts the finding. The first victim impact statement, completed by the victim's mother, explicitly indicates that Snyder's offenses did not cause any psychological or physical effects. Further, the PSIR found that "[t]here was no physical harm to [the victim] expected or caused." (PSIR, p. 19).

{¶39} This evidence indicating a lack of *any* physical or psychological harm was not controverted at the sentencing hearing. No witnesses testified regarding the purported harm experienced by the victim. *Compare State v. Nesser*, 5th Dist. No. 02 CA 103, 2005-Ohio-4313, ¶ 19 (finding that consecutive sentences were properly imposed where the victim was three years old and the mother of the victim testified at the sentencing hearing regarding the psychological harm experienced by the victim). Further, the State offered no evidence to support a finding of great harm except for its own characterizations of the harm experienced by the victim and the victim's family. These characterizations are not sufficient here since they lack any support in the record. *See State v. Nagy*, 8th Dist. No. 90400, 2008-Ohio-4703, ¶ 28 ("A prosecutor's statements are not testimony or evidence."); *State v. Bruce*, 4th Dist. No. 02CA51, 2003-Ohio-4081, ¶ 20 (finding that the trial court erred in imposing consecutive sentences on the basis that the victims suffered great or unusual harm since "there [was] simply no evidence in the record" to support such a finding). Due to the complete dearth of evidence in the record indicating the existence of

physical or psychological harm to the victim, we find that the trial court erred in imposing consecutive sentences.[7]

**{¶40}** Accordingly, we sustain Snyder's fourth assignment of error.

*Assignment of Error No. VI*

**{¶41}** In his sixth assignment of error, Snyder contends that the State engaged in prosecutorial misconduct during the sentencing hearing by: (1) making unsubstantiated statements as to the contents of the lewd pictures of the victim and Snyder's purported touching of the victim; (2) improperly referring to the victim's behavior after the incident in which she fought with her mother during diaper changes and a nurse during a medical examination; and (3) indicating that the victim's family suffered emotional distress from the incident. We disagree.

**{¶42}** Snyder did not object to any of the above statements at the sentencing hearing. As such, he has waived all but plain error. *State v. Twyford*, 94 Ohio St.3d 340, 355 (2002). To have plain error under Crim.R. 52(B), there must be an error that is an "obvious" defect in the proceedings and it must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*.

---

[7] The other provisions of R.C. 2929.14(C) are likewise inapplicable in this matter.

{¶43} The test for prosecutorial misconduct is "whether [the prosecutor's improper remarks] prejudicially affected the substantial rights of the accused." *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). As such, even if the prosecutor makes an improper remark, it "can nevertheless fail to constitute reversible error." *State v. Siefer*, 3d Dist. No. 5-09-24, 2011-Ohio-1868, ¶ 37. In assessing the existence of prosecutorial misconduct, we are mindful that "the touchstone of this analysis is the fairness of the [proceeding], not the culpability of the prosecutor." *Twyford* at 355.

{¶44} Here, Snyder challenges the following statements by the prosecutor at the sentencing hearing:

> Each of the photos were [sic] focused directly on [the victim's vagina] and, most disturbingly, one of the photos showed the victim's vagina spread open. It's difficult, your Honor, to imagine how that photo could have been taken unless [Snyder] had touched the victim.
>
> * * *
>
> Now, with respect to seriousness factors for this Court to consider that are laid out in the Revised Code, one of those is the potential mental injury to the victim. Now that devastating impact was evident when during the SANE examination the victim attempted to cover her genitals prior to the exam. It was also evident with the fact that the victim fought with her mother in the days after this offense occurred when her mother would try to change the victim's diaper. So you can see that was an obviously traumatic experience for the victim.
>
> * * *

I'd also like to note the damage done to the parents of the victim and the horror of seeing those pictures on that camera and realizing that their daughter was subjected to that.  Tr., p. 3-5.

**{¶45}** The prosecutor's statements regarding the effect of the crime on the victim's family was appropriate since such evidence is allowed so long as the family members do not recommend a certain sentence.  *See State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, ¶ 65 ("Victim-impact evidence is permitted where it elicits the effect that the victim's death had on family members."); *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, ¶ 118 (1st Dist.) ("The trial court may consider relevant statements regarding the impact of the offense on a victim's family and friends.").  Snyder cites *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, in support of his position that trial courts cannot consider the effect of a crime on the victim's family when sentencing a defendant.  There, the prosecutor made improper remarks regarding the effect of the murder on the victim's mother to a jury during the penalty phase of a capital murder case.  The Court reasoned that since such remarks would have been inadmissible at trial, they were consequently improperly used at the death penalty hearing.  *Id*. at ¶ 144.  Since this matter does not implicate a death penalty hearing, it is distinguishable from *Williams*.  Unlike the penalty phase of a capital murder case, where the Rules of Evidence apply, *State v. Sheppard*, 84 Ohio St.3d 230, 293 (1998), "[i]t is well-established that the Rules of Evidence do not apply to

sentencing hearings," *State v. Jackson*, 6th Dist. No. E-01-024, 2002-Ohio-2359, ¶ 38. *See also* Evid.R. 101(C)(3) ("These rules * * * do not apply in the following situations: * * * sentencing * * *."). Due to this critical distinction, we are unable to find that *Williams* controls our analysis. Instead, we find no fault in the prosecutor's statements as to the impact of the crime on the victim's family.

{¶46} However, we do find fault in the prosecutor's statements regarding the victim's "traumatic experience." There is no evidence in the record to support such a characterization. Rather, as stated above, the record directly contradicts this characterization. Further, the record does not include any corroboration of the prosecutor's statements regarding the victim's conduct during subsequent diaper changes or the medical examination.

{¶47} We also find some fault in the prosecutor's allegation that Snyder touched the victim inappropriately. The allegation was solely based on the contents of one of the pictures taken by Snyder. The only evidence in the record regarding the picture's contents was a police report including the statement of the victim's mother to police. Even if the State had offered testimony or other evidence to corroborate the police statement, its allegation would still not be immune from criticism. The mere fact that the victim's vagina was spread apart does not necessarily indicate that the victim was inappropriately touched while Snyder was changing her diaper. Further, it is relevant to note that the State did

not indict Snyder for a crime arising from any alleged touching and Snyder did not admit to any such touching.[8]

{¶48} Although we find varying levels of faults in the above statements, we are nevertheless unable to find that the statements reach the level of plain error and prosecutorial misconduct. *See State v. Combs*, 62 Ohio St.3d 278, 283 (1991) (finding that the prosecutor's "gross speculation" was improper but that it did not rise to the level of plain error since the statement did not make a "crucial difference"). The record contains sufficient evidence, without reference to the victim's harm or Snyder's alleged touching, to support the trial court's sentences on Counts II and III. Although the trial court cursorily indicated that it considered the State's oral statements at the sentencing hearing, it also indicated that it considered the entire record, the victim impact statements, and the PSIR. In light of the trial court's consideration of the entire record, we cannot find that several sentences spoken by the prosecutor amount to prosecutorial misconduct that affected the outcome of Snyder's sentence.

{¶49} Accordingly, we overrule Snyder's sixth assignment of error.

*Assignment of Error No. VII*

---

[8] The State's brief does not address or attempt to defend the propriety of the prosecutor's allegation of touching.

**{¶50}** In his seventh assignment of error, Snyder argues that the trial court erred by failing to merge his convictions for Counts I and II for the purposes of sentencing. Since Snyder raised this issue in his previous appeal, we find that res judicata and law of the case doctrine bar this assignment of error.

**{¶51}** In *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, the Supreme Court of Ohio held that "[a]lthough the doctrine of res judicata does not preclude review of a void sentence, res judicata still applies to other aspects of the merits of a conviction, including * * * the lawful elements of the ensuing sentence." *Id*. at paragraph three of the syllabus; *see also State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 15 ("[A] number of discretionary and mandatory limitations may apply to narrow the scope of a particular resentencing hearing."). As a result, after a reviewing court remands for resentencing, "the remainder of the sentence, which the defendant did not successfully challenge, remains valid under the principles of res judicata." (Internal quotation omitted.) *Fischer* at ¶ 17. Similarly, under law of the case doctrine, which stems from res judicata, *State v. Evans*, 9th Dist. No. 10CA0127-M, 2011-Ohio-4992, ¶ 12, "the decision of a reviewing court in a case remains the law of the case on the legal questions involved for all the subsequent proceedings in the case at both the trial and reviewing levels." (Internal quotation omitted.) *Fischer* at ¶ 33. Based on these principles, courts have barred defendants from raising allied offenses of

similar import issues in subsequent appeals after having raised them in previous appeals. *E.g.*, *State v. Cottrill*, 4th Dist. No. 11CA12, 2012-Ohio-1021, ¶ 11 (overruling the defendant's allied offenses of similar import assignment of error where the defendant had raised the issue in a previous appeal, which the court had similarly rejected); *Evans* at ¶ 13 (same).

**{¶52}** In *Snyder I*, Snyder argued that Counts I and II were allied offenses of similar import. Although we remanded this matter for re-sentencing, we explicitly rejected his argument regarding allied offenses of similar import and overruled his assignment of error. *Snyder I* at ¶ 16. As such, our determination in the previous appeal became the law of the case and res judicata bars Snyder from raising the issue again in this new appeal.

**{¶53}** Accordingly, we overrule Snyder's seventh assignment of error.

*No-Contact Order*

**{¶54}** Although not raised by the parties, we are compelled to address the trial court's imposition of a prison sentence and a no-contact order in its judgment entry of re-sentence for Snyder's convictions. Since Snyder did not object to the imposition of these dual penalties, he has waived all but plain error.

**{¶55}** "The current felony sentencing statutes * * * require a judge *either* to impose a prison term *or* to impose community control sanctions." (Emphasis added.) *State v. Baker*, 152 Ohio App.3d 138, 2002-Ohio-7295, ¶ 12 (7th Dist.).

As a result, "the sentencing statute[s] do[] not allow a trial court to impose both a prison sentence and community control for the same offense." *State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, ¶ 5 (8th Dist.); *see also State v. Hoy*, 3d Dist. Nos. 14-04-13, 14-04-14, 2005-Ohio-1093, ¶ 18. Ohio courts, including this one, have recognized no-contact orders as community control sanctions. *E.g.*, *State v. Marcum*, 4th Dist. Nos. 11CA8, 11CA10, 2012-Ohio-572, ¶ 12; *State v. Hosler*, 3d Dist. No. 16-09-21, 2010-Ohio-980, ¶ 17; *State v. Simms*, 12th Dist. No. CA2009-02-005, 2009-Ohio-5440, ¶ 25; *State v. Loveless*, 2d Dist. No. 2002CA16, 2002-Ohio-5380, ¶ 18. Since no-contact orders are considered community control sanctions, courts have vacated such orders where the defendant was convicted of a felony offense and the trial court also imposed a prison sentence. *E.g.*, *State v. Miller*, 12th Dist. No. CA2010-12-336, 2011-Ohio-3909, ¶ 21-22.

{¶56} Here, the trial court both imposed a prison term for Snyder's convictions and an order that he not contact the "victims." Based on the foregoing, the trial court had no authority under the felony sentencing statutes to impose these dual penalties.[9] As such, following *Miller*'s guidance, we vacate the trial court's no-contact order.

---

[9] Further, the reference to "victims" was erroneous since Snyder's offenses only had one victim, the two-year old child.

{¶57} Having found no error prejudicial to Snyder in the second assignment of error in part and in the third, fifth, sixth, and seventh assignments of error, but having found error prejudicial to Snyder in the first and fourth assignments of error, as well as plain error in the trial court's no-contact order, we affirm in part and reverse in part the trial court's judgment, vacate the trial court's no-contact order, vacate Snyder's sentence on Count I, and remand this matter for resentencing on Count I.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J., concurs.**
**SHAW, J., concurs in Judgment Only.**
**/jlr**