[Cite as *State v. Cedeno*, 2015-Ohio-5412.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 102327 and 102328**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## NOEL CEDENO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-564978-A and CR-13-580862-A

**BEFORE:** Keough, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 24, 2015

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By: Jeffrey Gamso
Assistant Cuyahoga County Public Defender
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Owen M. Patton
       Ronni Ducoff
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} In this consolidated appeal, defendant-appellant, Noel Cedeno, appeals his convictions contending that the court erred when it revoked his right to self-representation and allocution. For the reasons that follow, we affirm.

{¶2} In 2011, Cedeno was originally named in a six-count indictment charging him with sex offenses involving a child under the age of thirteen. The original indictment and two subsequent indictments were dismissed without prejudice due to inaccuracies regarding the dates of the alleged offenses. Cedeno was ultimately re-indicted in August 2012 under Case No. CR-12-564978 with eleven charges, including four counts of importuning, two counts each of gross sexual imposition, rape, kidnapping, and one count of attempted gross sexual imposition. Most of the counts contained sexually violent predator and repeat violent offender specifications, and notices of prior convictions.

{¶3} In September 2013 and during the pretrial stages of this case, another victim under the age of thirteen came forward alleging that Cedeno raped her. As a result, Cedeno was charged under Case No. CR-13-580862 with one count of rape and kidnapping. Each count contained various specifications, and notices of prior convictions. Case Nos. CR-12-564978 and CR-13-580862 were consolidated without objection.

{¶4} Cedeno subsequently waived his right to a jury trial. During the bench trial, the state presented to the court testimony from the victims, their friends and family members, a medical expert, a caseworker, two counselors, and the detective assigned to

investigate the cases. Following the close of the state's case, the state dismissed two counts of importuning as charged in Case No. CR-12-564978. After hearing testimony from Cedeno's witnesses, the trial court denied his renewed Crim.R. 29 motion for acquittal.

{¶5} In Case No. CR-12-564978, Cedeno was found guilty of two counts of gross sexual imposition of a child under the age of thirteen, one count of rape of a child under the age of thirteen, one count of kidnapping a child under the age of thirteen with a sexual motivation specification, and one count of attempted gross sexual imposition. He was found not guilty of one count of rape and kidnapping and two counts of importuning. In Case No. CR-13-580862, the court found Cedeno guilty of one count of rape of a child under ten years old and one count of kidnapping.

{¶6} Cedeno was sentenced to a mandatory life in prison sentence in Case No. CR-12-564978, to run consecutively to a mandatory life in prison sentence in Case No. CR-13-580862. Cedeno appeals, raising two assignments of error.

## I. Revocation of Self-Representation

{¶7} On the same day that trial was scheduled to begin on Case No. CR-12-564978, Cedeno stated in open court that he no longer wanted his attorney to represent him. The court advised him that the case was going to trial and that he could either represent himself or have another attorney appointed. Cedeno requested "another attorney to be assigned." (Tr. 9.) He further stated, "[I] deny consent to go to a bench trial or a jury trial." (Tr. 10.) The trial court stated that his request for new counsel was

"sounding * * * more and more like [Cedeno was] trying simply to delay these proceedings by waiting until the day before trial to tell us that you want a different attorney." (Tr. 18.) The state agreed that this was a stall tactic and objected to the appointment of new counsel. Nevertheless, the trial court indicated it would appoint Cedeno new counsel and continue the matter for a pretrial.

{¶8} In an October 2012 pretrial, Cedeno rejected the services of newly appointed defense counsel and requested to represent himself. Cedeno indicated he filed a waiver of counsel and a written Crim.R. 44(C) motion, whereby he indicated he was proceeding pro se, that his attorney was appointed without his consent, that he does not consent to any continuances or to go to trial because the trial court violated the doctrine of "unclean hands." During this hearing Cedeno continued to deny consent to any trials on any cases before this court. Although the state requested a referral to the court psychiatric clinic, the court denied the state's request, stating "[B]eing obstinate is not, in itself, a sign of mental disease or illness such as to make him incompetent to stand trial." (Tr. 31-32.) After advising Cedeno about the perils of representing himself, the trial court allowed Cedeno to proceed pro se. The court further ordered that the state provide Cedeno with discovery.

{¶9} At the next pretrial in November, Cedeno refused the state's discovery because he did not consent for it to be requested, it was incomplete and untimely. After Cedeno indicated that he would not accept any discovery from the state, the court relieved the state of its discovery obligations. Based on the court's overall observations of

Cedeno's behavior "that appeared to be irrational, bizarre, and inconsistent with his claimed ability to conduct an effective trial — either to a jury or to the court," the court referred Cedeno to the Court Psychiatric Clinic for a competency evaluation to stand trial and to determine whether he was competent to waive his right to counsel.

{¶10} At the Court Psychiatric Clinic, Dr. George Schmedlen attempted to evaluate Cedeno. However, according to Dr. Schmedlen's report, Cedeno declined to sign any medical releases and did not want to be evaluated. Dr. Schmedlen, after learning that Cedeno wanted to represent himself at trial and that Cedeno refused to accept discovery from the state, opined that "Cedeno's behavior raises a genuine issue as to his competency to stand trial and his competency to proceed pro-se." However, because of Cedeno's refusal to cooperate, Dr. Schmedlen could not assess his competency and suggested an inpatient evaluation at Northcoast Behavioral Healthcare. Both the trial court and the state indicated to Cedeno that a competency evaluation was necessary to determine whether he could represent himself.

{¶11} Following Dr. Schmedlen's recommendation, the trial court ordered Cedeno to undergo a 20-day inpatient evaluation at Northcoast Behavioral Healthcare. In January 2013, the trial court received a report from Dr. Joy Stankowski who referred to the findings of Dr. Jason Beaman. Dr. Beaman reported that he attempted to evaluate Cedeno; however Cedeno refused evaluation because he was competent to stand trial and to represent himself. Dr. Beaman concluded that it was his opinion that Cedeno's "lack

of cooperation is volitional and does not stem from a mental condition." Therefore, Dr. Beaman found Cedeno competent.

{¶12} Troubled that Cedeno was declared competent even though Dr. Beaman did not conduct an evaluation, the court referred Cedeno to Twin Valley Behavioral Healthcare for further evaluation. In open court, Cedeno refused an evaluation stating he has "nothing wrong" with him, he understood "perfect what the charge is," denied consent to a lawyer, and demanded to represent himself. (Tr. 119.)

{¶13} In June 2013, the trial court received the competency report prepared by Dr. Howard Sokolov of Twin Valley Behavioral Healthcare. Dr. Sokolov opined that Cedeno was both "competent to assist in [his] defense" and "able to voluntarily, knowingly and intelligently waive his right to counsel so that he can proceed pro se." (Tr. 127.)

{¶14} The trial court then asked Cedeno whether he agreed or stipulated to the report of Dr. Sokolov and the conclusions contained in the report. Cedeno responded that "I'm not going to accept it" because he did not consent to the evaluation or for Dr. Sokolov to make a report. (Tr. 132, 138.)

{¶15} Cedeno again was evaluated in the Court Psychiatric Clinic by Dr. Stephen Noffsinger who found Cedeno competent to stand trial and to proceed pro se. Nevertheless, Cedeno refused to stipulate to Dr. Noffsinger's report because it was neither signed nor did he give consent to do an evaluation.

{¶16} Upon request by the state, the trial court conducted a hearing to hear testimony from Dr. Noffsinger. During the hearing, Cedeno questioned Dr. Noffsinger about the report he prepared and how he could "give an evaluation of a person that was only with [him] for 15 minutes." (Tr. 192.) Dr. Noffsinger responded:

> As I mentioned, I did not do a thorough evaluation based on your decision to not cooperate. You told me several times that you were going to exert your right to not cooperate
>
> So, again, my evaluation is limited to what's in your records, and then my direct observations of you, but I am able to say with reasonable medical certainty that you do not have a present mental condition that would impair you from understanding the nature and objectives of the court proceedings or in assisting in your defense, or to impair you from intelligently, knowingly, and voluntarily waiving your right to counsel.

(Tr. 192-193.)

{¶17} Even though the court told Cedeno that Dr. Noffsinger concluded he was competent and he could waive his right to counsel, Cedeno refused to accept Dr. Noffsinger's report or opinion because he never gave consent. Based on Cedeno's refusal, the trial court indicated it would render a written decision whether it would allow Cedeno to continue to proceed without counsel.

{¶18} In the trial court's written decision deciding that Cedeno could not represent himself in this case, the court stated,

> [Cedeno's] actions have made it clear that he understands neither the charges against him nor even the most basic elements of what it would take to defend against those charges.
>
> * * *

Notwithstanding the absence of a diagnosis of "severe mental disease," however, the court finds that the concerns first voiced by Dr. Schmedlen — that the defendant's behavior "...raises a genuine issue as to his competency to stand trial and competency to proceed pro-se" — are supported, and indeed amplified, by the consistent pattern of behavior by the defendant himself throughout the proceedings * * *.

{¶19} The trial court then listed several instances where Cedeno's behavior indicated he could not proceed pro se — (1) he repeatedly denied his consent to either a bench or jury trial, (2) he rejected the state's discovery because it was not requested, and it was incomplete and untimely; but then complained that he did not receive discovery from the state; (3) he failed to accept the reports of multiple physicians that found him competent to stand trial and to represent himself because he "did not consent to the evaluations"; (4) he maintained the cases against him were closed or that the court lacked jurisdiction over him because he was a "man of flesh and blood"; (5) he referred to the charges against him as "victimless crimes"; and (6) he filed a number of motions that were irrelevant to the proceedings.

{¶20} The trial court reasoned that "either (1) [Cedeno] is not competent to provide himself with even the most rudimentary defense against these very serious charges, or (2) the defendant is competent, but is acting in this manner with the specific and perverse intention of making a mockery of these proceedings." The court concluded that to secure the fairness of the proceedings and to protect all involved, including the defendant, the alleged victims, and the community, Cedeno could not continue to proceed without counsel.

{¶21} When the trial court announced its ruling in open court, Cedeno repeated that he wanted to represent himself. Nevertheless, after the trial court explained its ruling, Cedeno changed his focus and questioned when his attorney would visit him. At that point, the court suggested that his appointed counsel in the newly indicted case — Case No. CR-13-580862 — could also represent him in this case. No objection was raised by Cedeno.

{¶22} Subsequently, his two cases were consolidated, Cedeno appeared with counsel, and the cases proceeded to trial. Cedeno did not raise any objection or complaint about his attorney or that he wanted to proceed pro se during the guilt phase. After he was convicted in both cases and during sentencing, Cedeno complained that he was deprived of his right of self-representation.

{¶23} In his first assignment of error, Cedeno contends that the trial court committed error and denied him his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Section 10, Article I of the Ohio Constitution when it revoked his right to represent himself and ordered that he would have to be represented by counsel.

{¶24} The Sixth Amendment guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

> To invoke the right of self-representation, the right to the assistance of counsel must be knowingly, voluntarily, and intelligently waived. A two

part inquiry may be required. First, the court must determine the defendant is competent to waive the right to counsel if the court has reason to doubt the defendant's competence. Second, the court must decide whether the waiver is knowing and voluntarily.

*State v. Watson*, 132 Ohio App.3d 57, 63, 724 N.E.2d 469 (8th Dist.1998), citing *Godinez v. Moran*, 509 U.S. 389, 400-402, 113 S.Ct. 2690, 125 L.Ed.2d 321 (1993); *see also State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81.

**{¶25}** Before a trial court permits a criminal defendant to represent himself, a valid waiver of counsel must appear affirmatively in the record. *State v. Irwin*, 8th Dist. Cuyahoga No. 90772, 2009-Ohio-848; *State v. Martin*, 8th Dist. Cuyahoga No. 80198, 2003-Ohio-1499. To establish an effective waiver, "the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right." *Irwin* at ¶ 34, citing *Gibson* at paragraph two of the syllabus. Although there is no prescribed colloquy, it is essential that the trial court ascertains that the defendant is aware of the dangers and disadvantages of self-representation, and that he is making the decision with his "eyes open." *Irwin* at ¶ 35, citing *Faretta* at 835. Specifically, the trial court must advise the defendant of the nature of the charges against him, the range of allowable punishment, the possible defenses, any mitigating circumstances, and the dangers of self-representation. *State v. Ford*, 8th Dist. Cuyahoga No. 86951, 2006-Ohio-3723, ¶ 63, citing *State v. Martin*, 8th Dist. Cuyahoga No. 80198, 2003-Ohio-1499.

**{¶26}** In this case and after advising Cedeno of the perils of proceeding pro se, the trial court initially concluded that Cedeno was competent to waive counsel and to stand

trial, and despite the state suggesting otherwise, the court stated that "[B]eing obstinate is not, in itself, a sign of mental disease or illness such as to make him incompetent to stand trial." (Tr. 31-32.) Therefore, the court allowed Cedeno to proceed pro se.

{¶27} However, the right of self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). There will be times when "the government's interest in ensuring the integrity and efficacy of the trial will outweigh the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of California*, 528 U.S.152, 162, 120 S.Ct.684, 145 L.Ed.2d 597 (2000); *United States v. Young*, 199 F.Supp.2d 697 (S.D. Ohio 2001) (the trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct).

{¶28} In this case, after the trial court observed Cedeno's irrational and bizarre behaviors in open court and through his pro se motions, the court determined that it was necessary for Cedeno to undergo an evaluation to determine whether he fully understood and intelligently relinquished his right to counsel. Subsequently, multiple doctors opined that Cedeno was competent to stand trial and to represent himself at trial.

{¶29} Nevertheless, a trial court may rely on its own observations to determine whether to grant a defendant's request to proceed pro se, which may be contrary to the expert reports. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263 (court may rely on own observations to determine competency). Additionally, the trial court may consider how an expert reached a conclusion when deciding whether the accept

his conclusion. *See State v. Nickell*, 6th Dist. Wood No. WD-07-015, 2008-Ohio-1571 (reversing a trial court's determination that the defendant was competent to stand trial because the sole expert evaluation relied upon by the court was based on a single interview and stated vague, generalized conclusions and where the defendant's responses to the trial court's questions demonstrated that she lacked competency).

**{¶30}** In this case, the trial court relied on its own observations and interactions with Cedeno and the circumstances surrounding the competency evaluations when it decided to terminate Cedeno's ability to self-represent. The court noted that despite the reports concluding Cedeno was competent, no formal and complete evaluation was conducted because Cedeno refused to cooperate or otherwise participate in the evaluations. This defiant behavior was evidenced when the court asked Cedeno whether he accepted the opinion of Drs. Sokolov and Noffsinger that he was competent to stand trial and to represent himself. Cedeno repeatedly stated that he did not accept or stipulate to the reports because he "never consented to the evaluations." This response is clear that Cedeno did not understand the legal procedures before the court.

**{¶31}** Cedeno's misunderstanding of the legal proceedings was further demonstrated when he repeatedly asserted that he did not consent to any trial before the court and that the trial court lacked jurisdiction because he is "a [m]an of flesh and blood." The record also demonstrates that Cedeno did not understand the nature and severity of his charges through his motion practice by referring to his charges as "victimless crimes."

{¶32} Our review of the record reveals that Cedeno's pattern of delay and manipulation began on September 27, 2012, the day Case No. CR-12-564978 was originally scheduled for trial, when he first denied "consent to go to trial to a bench trial or jury," and expressed dissatisfaction with his attorney and requested that the attorney be removed from his case. Although the trial court gave Cedeno the option of self-representation, Cedeno requested that another attorney be appointed, whom he later stated was "unsatisfactory."

{¶33} Cedeno's obstructionist behavior was further evidenced by his refusal to accept discovery from the state. He initially rejected the state's discovery because he "did not request it"; rather, his counsel made the request without consent. Later, he complained that the state did not comply with the discovery request because it would not provide him with all discovery and the production was untimely. After Cedeno indicated he would not accept the state's discovery, he subsequently filed an "Affidavit of Fact/Writ of Discovery" where he "demands for Crim.R. 16, discovery."

{¶34} These obstructionist behaviors, delay tactics, and deliberate manipulations prompted the trial court to terminate Cedeno's self-representation. It was readily apparent that Cedeno would not cooperate in the proceedings, even when the matter was helpful to Cedeno or was a ruling in his favor. In *Faretta*, the United States Supreme Court noted that "[T]he right to self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 384, 95 S.Ct. 2525, 45 L.Ed.2d 562. The

trial court attempted to protect all parties and the integrity of the proceedings in its decision, and we find no abuse of discretion.

**{¶35}** Finally, we note that after trial commenced, Cedeno never renewed his request to self-represent. In *Halder*, this court discussed this precise situation — "the fact that [the defendant] never renewed his desire to represent himself was 'helpful in evaluating [his] intended use of the request, i.e., was it a sincere desire to proceed pro se or manipulative.'" *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 59; *State v. Williams*, 8th Dist. Cuyahoga No. 99859, 2014-Ohio-1057, ¶ 26 (Stewart, J., dissenting).

**{¶36}** Accordingly, after thoroughly reviewing the circumstances of the case and relevant case law, we conclude that the trial court did not abuse its discretion in revoking Cedeno's right to represent himself. The first assignment of error is overruled.

## II. Right to Allocution

**{¶37}** In his second assignment of error, Cedeno contends that the trial court committed error and denied him his rights under the Sixth and Fourteenth Amendments to the United States Constitution, Section 10, Article I of the Ohio Constitution, R.C. 2929.19(A)(1), and Crim.R. 32(A)(1) when it granted the state's objection and summarily revoked his right to allocution.

**{¶38}** Pursuant to Crim.R. 32(A)(1) and R.C. 2929.19(A), the trial court is required to personally address a defendant and give him an opportunity to speak prior to sentencing. "'The purpose of allocution is to allow the defendant an additional

opportunity to state any further information which the judge may take into consideration when determining the sentence to imposed [sic].'" *State v. Budreaux*, 8th Dist. Cuyahoga No. 63698, 1993 Ohio App. LEXIS 4415, *4 (Sept. 16, 1993), quoting *Defiance v. Cannon*, 70 Ohio App.3d 821, 828, 592 N.E.2d 884 (3d Dist.1990). *See also State v. Smith*, 2d Dist. Greene No. 94-CA-86, 1995 Ohio App. LEXIS 4960 (Nov. 8, 1995) (finding no error when a court limits a defendant's presentence statement to those issues that bear upon the impending punishment and that may carry mitigative weight); *State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2007-Ohio-3278.

**{¶39}** In this case, the trial court afforded Cedeno his right of allocution. The initial statements made by Cedeno were unrelated to mitigation of his punishment, and instead focused on extraneous matters that could have been raised during trial. After the trial court sustained the state's objection to these unrelated statements, the trial court directed Cedeno "that the issue before us right now is what you have to say, if anything, with respect to the sentence that is to be imposed." (Tr. 928.) The record does not reflect that Cedeno was interrupted or limited during his second opportunity to address the court in mitigation.

**{¶40}** Accordingly, the record demonstrates that the trial court did not interfere with Cedeno's rights afforded by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio Constitution when it limited Cedeno's allocution to statements related to the mitigation of punishment. The second assignment of error is overruled.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR