[Cite as *State v. Clark*, 2018-Ohio-4789.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. CT2018-0006 |
| | : | |
| ZAIRE L. CLARK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Muskingum County
                                Court of Common Pleas, Case No.
                                CR2017-0173



JUDGMENT:                       AFFIRMED



DATE OF JUDGMENT ENTRY:         November 29, 2018



APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

D. MICHAEL HADDOX                       OHIO PUBLIC DEFENDER
MUSKINGUM CO. PROSECUTOR                NIKKI TRAUTMAN BASZYNSKI
GERALD V. ANDERSON                      250 East Broad St. – Ste. 1400
27 North Fifth St., P.O. Box 189        Columbus, OH 43215
Zanesville, OH 43702-0189

*Delaney, J.*

{¶1}   Appellant Zaire L. Clark appeals from the November 17, 2017 Judgment Entry of the Muskingum County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Appellant and Vincent Brown have an on-again, off-again relationship; Brown describes appellant as his fiancée.  In 2016, the two had a number of "legal issues" with each other that resulted in Brown's conviction for violation of a temporary protection order.  Brown served a prison term and was on post-release control as of May 7, 2017. Brown was ordered not to have contact with appellant, but he was admittedly staying with appellant at her home at least periodically.

{¶3}   Appellant at the time was living at 1236 Putnam Avenue.  This residence is very close to 1227 Moxahala and 1227½ Moxahala.  1227½ is an in-law suite occupied by Jennie Uhlman.  Uhlman is a longtime neighbor and friend of both appellant and Brown.  Uhlman's daughter Sylvia lives at 1227.

*Brown's account*

{¶4}   Brown asked Uhlman if he could occasionally sleep on her couch so he could remain close to appellant but avoid being in violation of the terms of his post-release control.[1]  Uhlman agreed.

{¶5}   Brown testified at trial for appellee and acknowledged appellant has a "mercurial temperament" with swift, drastic mood changes.  Brown testified these are symptoms of her mental illness and are exacerbated by drug abuse.  On May 6, 2017,

---

[1] Testimony varied as to where Brown lived.  He told law enforcement he was living at 1227½ Moxahala, but the evidence indicated he lived with appellant and tried to hide the fact so as to not be in violation of the terms of his post-release control.

appellant had not slept for a long period of time and became upset when she went through Brown's phone. Brown woke up in the late night hours of May 6 as appellant ordered him to leave and threatened to call police to have him sent back to prison.

{¶6} Brown asked Uhlman if he could sleep on her couch and she helped him move a few belongings over to her residence. The items Brown brought with him included a small flat-screen T.V. Brown testified he didn't tell appellant where he was going.[2] Once he moved his items to Uhlman's, he laid down on the couch and fell asleep. He woke up to find appellant carrying the small T.V. out the door of Uhlman's residence. Brown testified he didn't see appellant enter the residence; the door had been closed and dead-bolted but it wasn't secure because the window in the door was broken and had Plexiglass taped over it.

{¶7} Upon the commotion in the living room, Uhlman also woke up and came into the room. Brown told her appellant had come to take the T.V. back and that he was going back to sleep. He and Uhlman closed the door and put a curio cabinet against the door to keep it closed. Brown testified he wanted to avoid an altercation with appellant because he didn't want to return to prison. He was unconcerned about the T.V. and went back to sleep.

{¶8} Appellant returned and knocked on the door. In Brown's account, Uhlman came to the door and told her to go home. At some point appellant was back inside the house, the curio cabinet was overturned, and Uhlman was attempting to push her out. Brown claimed not to have seen appellant enter the residence. According to Brown,

---

[2] Minor inconsistencies are throughout the witnesses' accounts. For example, Brown said he didn't tell appellant where he was going, but Uhlman said appellant called her and asked if Brown could stay there.

appellant and Uhlman ended up fighting outside the house. Brown claimed he "didn't know who started what," and he could only confirm that Uhlman asked appellant to leave.

*Uhlman's account*

{¶9} Uhlman testified that appellant called her in the evening hours of May 6, 2017, and was very upset because she wanted Brown out of the house. Uhlman agreed Brown could sleep on her couch and helped him gather some belongings including a small T.V.

{¶10} Uhlman awoke in the early morning hours of May 7 to the sound of glass shattering and Brown yelling. Uhlman put on a housecoat and went into the living room to discover her door had been "busted in," appellant was in the living room, and Brown was upset that she was there. Someone called the police or claimed to have called police, so appellant left. Uhlman suspected appellant would return so she and Brown placed a curio cabinet in front of the door.

{¶11} Appellant did return and knocked over the curio cabinet. Brown told Uhlman appellant took the T.V. According to Uhlman, she herself stumbled over the curio cabinet as she went to look out the door. As she looked out, Uhlman said she was suddenly struck across the face with a metal pole. The pole turned out to be the handle of a steam mop, without the mop-head attachment. A photo of the mop handle was admitted as appellee's exhibit C-26. Appellant and Uhlman then struggled with each other, fighting. Uhlman testified her daughter and other bystanders broke up the fight. Appellant retreated to her own residence.

{¶12} Uhlman further testified that the "pole" or "mop handle" she was struck with did not come from her house; the door to her home was dead bolted but not secure due

to the Plexiglass taped over the window; and she didn't give appellant permission to enter her home.

*Additional witnesses*

{¶13} Sylvia Myers, Uhlman's daughter, testified she was awakened by a friend telling her appellant was beating up Myers' mother. Myers ran outside and tried to separate the two. Myers testified appellant struck Uhlman across the face with a metal "cleaning tool" which she then threw to the ground. Appellant then walked back to her own residence. Myers added that appellant seemed to be angry with Uhlman because she accused Brown of being involved with another of Uhlman's daughters.

{¶14} Zanesville police were brought to the area of Putnam and Moxahala by multiple 911 calls. The first caller alleged a black male with a gun was in the area. This 911 call was played at trial and witnesses identified the caller as appellant. Detective Jon Hill testified the call was determined to be "fake;" no man with a gun was found, no gun was found at the scene, and no one else reported a man with a gun.

{¶15} Police took statements from the witnesses and photographed Uhlman's injuries.

{¶16} Police went to appellant's residence to investigate. While speaking with appellant, Ptl. Brian Ruff observed her demeanor was very erratic; she was speaking quickly and disjointedly. He believe appellant was under the influence of narcotics. Inside appellant's residence, Ruff observed the butt of a firearm on a chair in the living room. He asked whether it had been left behind by Brown and appellant said no, it was a BB gun. She then showed him a stun gun she used for "safety." Ruff observed drug

paraphernalia in plain view throughout the living room, including a spoon with black residue on the coffee table and a loaded syringe.

{¶17} Law enforcement obtained a search warrant for appellant's residence. Drugs and drug paraphernalia were found throughout the residence, photographed, and collected. The parties jointly stipulated that substances found in the residence tested as 4.31 grams of methamphetamine and 2.08 grams of heroin and fentanyl.

{¶18} Appellant was charged by indictment as follows: Count I, burglary pursuant to R.C. 2911.12(A)(1), a felony of the second degree; Count II, aggravated burglary pursuant to R.C. 2911.11(A)(1), a felony of the first degree; Count III, aggravated burglary pursuant to R.C. 2911.11(A)(2), a felony of the first degree; Count IV, felonious assault pursuant to R.C. 2903.11(A)(2), a felony of the second degree; and Count V, drug possession (methamphetamine) pursuant to R.C. 2925.11(A), a felony of the third degree.

{¶19} Appellant entered pleas of not guilty and the matter was scheduled for trial by jury to proceed on September 6, 2017.

{¶20} On August 31, 2017, appellant filed a motion to "relinquish" her counsel.[3] The trial court addressed the matter at a hearing on September 5, 2017, and ordered a competency evaluation of appellant prior to determining her motion to waive her right to counsel.

{¶21} A competency hearing was held on October 27, 2017, and the parties stipulated to admission of an expert report finding appellant is "with a reasonable degree of psychological certainty, [ ] presently capable of assisting in her defense * * *." Also on

---

[3] Attorney Keith Edwards was appointed defense trial counsel.

that date, the trial court denied appellant's request to waive counsel and ordered that Edwards would continue as defense trial counsel.

{¶22} The matter proceeded to trial by jury.  Appellant was found guilty upon Counts III and V (aggravated burglary and drug possession) and not guilty upon Counts II and IV (aggravated burglary and felonious assault).[4]

{¶23} On December 11, 2017, appellant filed a pro se "motion for acquittal."

{¶24} A sentencing hearing was held on December 18, 2017.  The trial court overruled appellant's motion for acquittal and imposed, e.g., an aggregate prison term of 10 years.

{¶25} Appellant now appeals from the trial court's entry of conviction and sentence dated December 19, 2017.

{¶26} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶27} "I.  THE TRIAL COURT ERRED WHEN IT DENIED [APPELLANT] HER RIGHT TO SELF-REPRESENTATION."

{¶28} "II.   [APPELLANT'S]  AGGRAVATED-BURGLARY  CONVICTION  WAS BASED UPON INSUFFICIENT EVIDENCE."

{¶29} "III.   [APPELLANT'S]  AGGRAVATED-BURGLARY  CONVICTION  WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

---

[4] Appellee moved to dismiss Count I, burglary, prior to commencement of closing arguments, and the trial court granted the motion to dismiss.

{¶30} "IV.   THE PROSECUTOR ENGAGED IN MISCONDUCT DURING THE SENTENCING HEARING, WHICH RESULTED IN THE IMPOSITION OF A TEN-YEAR TERM OF IMPRISONMENT UPON [APPELLANT]."

**ANALYSIS**

I.

{¶31} In her first assignment of error, appellant argues the trial court erred in denying her motion to represent herself.  We disagree.

{¶32} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provides that a criminal defendant has a right to counsel. Crim.R. 44(A) provides that a defendant is entitled to counsel "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."

{¶33} A criminal defendant also has the constitutional right to waive counsel and to represent herself at trial. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The waiver of counsel has been described as "a stormy sea for a trial court to navigate." *State v. Gatewood,* 2nd Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, ¶ 34.

{¶34} "[T]he Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar,* 541 U.S. 77, 87–88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson,* 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. The defendant must make an intelligent and voluntary waiver with the knowledge [s]he will have to represent [her]self,

and that there are dangers inherent in self-representation. *State v. Ebersole,* 107 Ohio App.3d 288, 293, 668 N.E.2d 934 (3rd Dist.1995), citing *Faretta,* supra.

{¶35} In *Gibson,* the Ohio Supreme Court applied the test set forth in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), which established the requirements for a sufficient pretrial inquiry by the trial court into a waiver of counsel:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.
>
> *State v. Gibson,* 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976).

{¶36} The right of self-representation is not absolute. *Indiana v. Edwards,* 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008); see also, *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) [no right of self-representation on direct appeal]; *McKaskle v. Wiggins,* 465 U.S. 168, 178-179, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) [appointment of standby counsel over self-represented defendant's objection is permissible]; *Faretta,* supra, 422 U.S., at 835, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 [no right 'to abuse the dignity of the courtroom']."

{¶37} Moreover, the U.S. Supreme Court has held the right of self-representation does not exist to "avoid compliance with 'relevant rules of procedural and substantive law' or to 'engage[e] in serious and obstructionist misconduct.'" *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), citing *Faretta,* supra at 834, n. 46. "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *U.S. v. Frazier-El*, 204 F.3d 553, 560 (2000); see also, *State v. Norris*, 5th Dist. Stark No. 2007CA00101, 2008-Ohio-4089, 120 Ohio St.3d 1489, 2009-Ohio-278, 900 N.E.2d 199 [defendant's failure to comply with procedural rules demonstrated manipulation, not desire to invoke right of self-representation].

{¶38} Courts are to indulge in every reasonable presumption **against** the waiver of a fundamental constitutional right such as the right to be represented by counsel. *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (2d Dist.1996) (emphasis added). A criminal defendant must "unequivocally and explicitly invoke" her right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. When a request for self-representation is not unequivocally and timely made, the trial court may, in its discretion, deny the request. *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 50.

{¶39} There is no prescribed colloquy to establish an effective waiver; the information a defendant must possess to make an intelligent election "'depend[s] on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *State*

*v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

{¶40} The trial court is in the best position to determine whether appellant's waiver of counsel is knowing and intelligent.  "The trial court was not required to surrender the courtroom to a defendant who wished to represent [herself] but failed to demonstrate that [she] waived the right to counsel knowingly and intelligently."  *State v. Buchanan*, 8th Dist. No. 104500, 2017-Ohio-1361, 88 N.E.3d 686, ¶ 17, appeal not allowed*,* 150 Ohio St.3d 1444, 2017-Ohio-7843, 82 N.E.3d 1176.

{¶41} In the instant case, we disagree with appellant's characterization of her actions as an unequivocal, explicit invocation of her right to represent herself.  Appellant asked to "relinquish" counsel with her letter to the trial court of August 31, 2017.  The trial court addressed the request at the hearing on September 5, noting that appellant's communication with the court about several issues led the court to seriously question her competency.  The trial court therefore ordered a competency evaluation and held the remainder of appellant's requests in abeyance, including the request to represent herself.

{¶42} On October 27, 2017, the parties appeared for a competency hearing and stipulated to the expert report.  The hearing continued as follows:

> * * * *.
>
> THE COURT:  The Court has before it the report of Dr. Shannon Porter indicating that she finds that the defendant is competent to—has the ability to work with counsel and assist in her defense, should she choose to do so.  And it did indicate that her

personality style may pose a challenge for any attorney that may be involved in the case.

The Court finds, based upon the stipulation of the report, that the defendant is competent to stand trial, and the matter will proceed according to law.

Next, the Court will deal with the issue of her request to represent herself. This indicates that you are competent to assist an attorney but not that you're an attorney. It is not indicated in this report.

Obviously, the problems that you have led me to have this evaluation done because you have sent out numerous letters to myself, to the prosecutor, and everybody else that indicates that you are not aware of what could hurt you and what could help you. Therefore, you need an attorney to represent you.

You requested Mr. Edwards the first time they went to talk to you about getting an attorney. Mr. Edwards is your attorney. He will assist you. You will work with him, and you will not get mad and yell and scream and rant and rave. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: He will assist you. He will let you know when the trial has been set, and he'll help you prepare your defense and let you proceed to trial. You cooperate with him. He is an excellent attorney, handles numerous cases, as you just saw in this courtroom.

He knows what he's doing. Listen to him, and he will help you. You'll be remanded to the custody of the sheriff, and your new trial date will be set.

THE DEFENDANT: May I say something?

THE COURT: Yes, you may.

THE DEFENDANT: Can—may I have the evidence he denied me of, the pictures that has to do with my case that he denied me on a phone call?

THE COURT: Mr. Edwards, what pictures is she talking about?

MR. EDWARDS: I have provided her all of the—a full copy of any non-counsel-only paper discovery. And then the electronic discovery, I took my laptop in to the jail and showed her all the pictures. She wants printouts of additional pictures in addition to what was provided in paper discovery. I told her I'm not giving her those.

THE COURT: Are there other pictures?

MR. EDWARDS: She's seen every single piece of discovery. We've gone through every page of it carefully.

THE DEFENDANT: Your Honor, he gave me pictures that— two of them's not even has anything to do with my case because the charges was dropped. (*Sic throughout.*)

THE COURT: He gave you what the prosecutor gave him.

THE DEFENDANT: He said he was going to give them to me--

THE COURT: He cannot create something he does not have.

THE DEFENDANT: --and then he said he was not because I was acting like a lunatic. So he denied me my evidence one—over the phone call, recorded phone call. He said he's not giving me my evidence. He told me he was going to give them to me, have them in color, instead of distorted.

THE COURT: This is why you can't represent yourself. Hold on one second. He just stated in this courtroom he has shown you all the evidence he has. Is that correct?

MR. EDWARDS: That's right.

THE DEFENDANT: He did state that, but he was supposed to give me copies of the pictures and he stated that also.

THE COURT: Have you given her copies?

MR. EDWARDS: I've given her a copy of all the paper discovery, and I've shown her all of the electronic discovery, played every interview that was recorded. I believe I've given her and shown her and shared with her and made her aware of everything the State has given me on two occasions. And we'll do it again with her before trial.

THE COURT: Obviously, in prepping for trial, you will review everything all over again.

THE DEFENDANT: Well, he's saying something different beside what he said on the phone. If you go back to the phone call, you will hear it.

THE COURT: Well, it doesn't matter what he said on the phone call. That is what he's saying now, and that is what he's going to do. You just assured me you will cooperate with him.

THE DEFENDANT: I did, but that's--

THE COURT: That's what you two are going to do. And you're going to be quiet and go have a seat, and they'll take you back to the jail.

T. II, 3-7.

{¶43} We review a trial court's denial of a request for self-representation asserted prior to the commencement of trial *de novo*. See, *State v. Degenero*, 11th Dist. Trumbull No. 2015-T-0104, 2016-Ohio-8514, ¶ 19, appeal not allowed, 149 Ohio St.3d 1421, 2017-Ohio-4038, 75 N.E.3d 238.

{¶44} In the instant case, we find appellant revoked her request to represent herself and accepted the representation of appointed counsel. *State v. Cook*, 5th Dist. No. 2015CA00090, 2016-Ohio-2823, 64 N.E.3d 350, ¶ 90. We do not find, and appellant does not point to, any renewal of her request to represent herself after the letter of August 31, 2017.

{¶45} Appellant argues she should have been permitted to represent herself, but as of the competency hearing of October 27, and again by the time of trial on November 14, there is no evidence appellant sought to proceed pro se. Nor was counsel forced upon

her. Appellant agreed to the appointment of Attorney Edwards, who continued to represent her at trial. We are thus unable to find that appellant voluntarily, knowingly, and intelligently elected to represent herself because the record establishes her acceptance of court-appointed counsel. *Id.* at ¶ 91.

{¶46} Our conclusion is in accord with the decision of the Ohio Supreme Court finding if the record definitively demonstrates a defendant abandoned her request to represent herself, as it does here, there is no violation of the Sixth Amendment right to self-representation. *Cook*, supra, 2016-Ohio-2823 at ¶ 93, citing *State v. Obermiller,* 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93.

{¶47} The trial court was patient with, and respectful of, appellant; listened to her arguments; attempted to explain the process; and permitted appellant to raise the discovery issues she was concerned about. *State v. West*, 2nd Dist. Greene No. 2015-CA-72, 2017-Ohio-7521, ¶ 48. The court also diligently attempted to ascertain whether appellant truly wanted to represent herself or whether she wanted to proceed with counsel; but she was not clear and unequivocal about her desire to proceed on her own behalf. *Id.* As is evident from the exchange cited supra, appellant's concern was access to the alleged missing discovery.

{¶48} We are unable to conclude the trial court erred in keeping Edwards in place as court-appointed counsel. We conclude appellant waived the request to represent herself because she consented to Edwards' representation, did not renew her request to represent herself, and permitted counsel to act on her behalf at trial.

{¶49} The expert assessment of appellant's competence has been made part of the record for our review. The report states in pertinent part, "* * *[I]t is also my opinion,

with a reasonable degree of psychological certainty, that the defendant is currently capable of understanding the nature and objective of the legal proceedings and assisting counsel in her own defense (*if she chooses to do so.*)  * * * *.  [Emphasis in original.]  In this case, after the trial court observed appellant's erratic behavior in open court and through her pro se communications, the court determined that it was necessary for appellant to undergo an evaluation to determine whether she fully understood and intelligently relinquished her right to counsel. See, *State v. Cedeno*, 8th Dist. Cuyahoga No. 102327, 2015-Ohio-5412, ¶ 28, appeal not allowed, 145 Ohio St.3d 1460, 2016-Ohio-2807, 49 N.E.3d 321.  The parties stipulated to the report finding appellant competent to stand trial.  "Nevertheless, a trial court may rely on its own observations to determine whether to grant a defendant's request to proceed pro se, which may be contrary to the expert reports."  *Cedeno*, supra, 2015-Ohio-5412 at ¶ 29, citing *State v. Were,* 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263 [court may rely on own observations to determine competency]. In this case, the trial court relied on its own observations and interactions with appellant, appellant did not renew her request to represent herself, and consented to representation by appointed counsel.

{¶50} Appellant's first assignment of error is overruled.

## II., III.

{¶51} Appellant's second and third assignments of error are related and will be considered together.  She argues her aggravated-burglary conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶52} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380,

1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶53} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."  *State v. Thompkins*, supra, 78 Ohio St.3d at 387.  Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction."  *Id.*

{¶54} Sufficiency of the evidence is a legal question dealing with whether the state met its burden of production at trial. *State v. Murphy*, 5th Dist. Stark No. 2015CA00024, 2015–Ohio–5108, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial

to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Murphy* at ¶ 15. The test for sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶55} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Murphy* at ¶ 15, citing *Thompkins* at 386.

{¶56} In the instant case, appellant was convicted of aggravated burglary pursuant to R.C. 2911.11(A)(2), which states in pertinent part: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶57} Appellant argues appellee's evidence failed to meet two elements: no evidence exists she trespassed inside Uhlman's home, and the mop handle was not a deadly weapon.

{¶58} The jury could reasonably find the mop handle wielded in the instant case was a "deadly weapon" and the finding is not against the manifest weight of the evidence. A "deadly weapon" is any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon. R.C. 2923.11(A). An instrument, no matter how innocuous when not in use, is

a deadly weapon if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded. *State v. Deboe*, 62 Ohio App.2d 192, 193–94, 406 N.E.2d 536, 537 (6th Dist.1977). The manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death. *Id.* A factfinder may "infer the deadly nature of an instrument from the facts and circumstances of its use." *State v. Vondenberg*, 61 Ohio St.2d 285, 289, 401 N.E.2d 437 (1980). Examples of deadly weapons vary. See, *State v. Deboe*, 62 Ohio App.2d 192, 193–94, 406 N.E.2d 536, 537 (6th Dist.1977) [bat "wrapped with something spongy"]; *State v. Pope*, 3rd Dist. Logan No. 8-89-19, 1990 WL 157268, *4 [toilet plunger handle]; *State v. Ford*, 2nd Dist. Montgomery No. CA 14389, 1995 WL 19114, *2 [metal bar]; *State v. Smith*, 8th Dist. Cuyahoga No. 103676, 2016-Ohio-7708 [chair leg]; *State v. Redmon*, 5th Dist. Stark No. CA-7938, 1990 WL 94745, *2, appeal dismissed*, 56 Ohio St.3d 711, 565 N.E.2d 834 (1990) [wicker rocking chair].

{¶59} In the instant case, Uhlman testified appellant struck her hard across the face with the mop handle. Uhlman was not rendered unconscious but she did sustain bruising and injury to her face as illustrated by appellee's exhibit B-4. She still suffered pain from the incident as of the date of trial six months later. It was a question of fact for the jury to determine whether the mop handle was a deadly weapon within the definition of R.C. 2923.11(A), and upon the evidence, this court is not in a position to disturb its conclusion. *State v. Pope*, supra, 3rd Dist. Logan No. 8-89-19, 1990 WL 157268, *4.

{¶60} Appellant next argues there is insufficient evidence she entered Uhlman's residence with the mop handle, although she acknowledges a police officer testified witnesses told him that night appellant entered the residence with some type of sweeper

or broomstick. We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133. Appellee's photographs demonstrate appellant entered the residence by thrusting her hand through the Plexiglass-covered window in the door, as shown in appellee's exhibits C-7 and C-13. The curio cabinet was knocked over and broken (appellee's exhibits C-8, C-9, and C-11). The small T.V. Brown brought with him was gone and later found in appellant's residence.

{¶61} Appellant's specific argument is that the evidence does not establish she trespassed in Uhlman's residence with the mop handle. The mop handle came from appellant's residence. Uhlman was struck with it as she looked out her door. Myers saw appellant holding the cleaning tool as she fought with Uhlman. The sticker from the mop handle was found on the ground right outside 1227½. Appellee's exhibits C-5 and C-6 show the sticker just outside the threshold.

{¶62} The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. It is not the function of an appellate court to substitute its judgment for that of the factfinder. State v. *Jenks,* 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991).

{¶63} Any inconsistencies in the witnesses' accounts were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley,* 10th Dist. Franklin No. 01AP–926, 2002–Ohio–2425, ¶ 16. We defer to the trier of fact as

to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo,* 11th Dist. Trumbull No. 2009–T–0105, 2010–Ohio–2048, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id.*

{¶64} The finder of fact may take note of the inconsistencies and resolve or discount them accordingly, but such inconsistencies do not render defendant's conviction against the manifest weight of the evidence. *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714, at *3 (May 28, 1996).

{¶65} Upon our review of the entire record, we conclude appellant's aggravated burglary conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's second and third assignments of error are overruled.

IV.

{¶66} In her fourth assignment of error, appellant argues the prosecutor committed misconduct during the sentencing hearing. We disagree.

{¶67} Appellant points to several instances of alleged prosecutorial misconduct at the sentencing hearing, when the prosecutor referenced the following: she assaulted Uhlman despite acquittal upon the charges related to the assault; appellant was "beating

up" people in jail; heroin was found in the apartment but she wasn't charged for it; and she "set up" Brown to get shot by police with the false 911 call.

{¶68} The statement about appellant's conduct in jail is merely an allegation, and the Rules of Evidence do not apply at sentencing hearings. *State v. Jackson,* 6th Dist. No. E–01–024, 2002–Ohio–2359, ¶ 38; Evid.R. 101(C)(3) ("These rules * * * do not apply in the following situations: * * * sentencing * * *.").

{¶69} The remaining statements are arguable characterizations of the evidence at trial.  The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E .2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed .2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166.  In assessing the existence of prosecutorial misconduct, we are mindful that "the touchstone of this analysis is the fairness of the [proceeding], not the culpability of the prosecutor." *State v. Twyford,* 94 Ohio St.3d 340, 355 (2002).

{¶70} We note appellant did not object to these statements during the sentencing hearing. *State v. Snyder*, 3rd Dist. Seneca No. 13-12-38, 2013-Ohio-2046, ¶ 42.  If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White,* 82 Ohio St.3d 16, 22, 1998–

Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

{¶71} We therefore review appellant's allegations under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Franklin Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶72} Appellant points to no authority supporting her position that the contested statements at sentencing rose to the level of prosecutorial misconduct.  Moreover, we disagree with appellant's conclusion that the trial court relied upon these statements to the prejudice of appellant.  The trial court heard the evidence and the jury's verdict.  The trial court noted the P.S.I. factored in the sentencing and it has been included in the record for our review.  The trial court was more concerned with appellant's lengthy criminal record including 2 prior felony and 19 misdemeanor convictions. "In light of the trial court's consideration of the entire record, we cannot find that several sentences spoken by the

prosecutor amount to prosecutorial misconduct that affected the outcome of [appellant's] sentence." *State v. Snyder*, 3rd Dist. Seneca No. 13-12-38, 2013-Ohio-2046, ¶ 48.

{¶73} We find no evidence in the record that the trial court relied on the prosecutor's comments in imposing appellant's sentence. The P.S.I. and the testimony and information presented at the sentencing hearing supports the trial court's decision. See, *State v. Warwick*, 12th Dist. Preble No. CA2017-01-001, 2018-Ohio-139, ¶ 31

{¶74} Assuming for the sake of argument that the prosecutor's remarks were improper, appellant has not demonstrated prejudice. It is well-established that pursuant to R.C. 2929.12(A), the trial court may consider "any relevant factors in imposing a sentence." *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 21, citing *State v. Birt,* 12th Dist. Butler No. CA2012–02–031, 2013–Ohio–1379, ¶ 64. The trial court expressly stated on the record that it formulated the sentence based upon the P.S.I. and appellant's history of violence as documented therein, and appellant has not pointed to anything in the record that would suggest that the trial court relied on the prosecutor's statements when it sentenced her. *State v. Reed*, 9th Dist. Medina No. 11CA0080-M, 2012-Ohio-2827, ¶ 8, citing *State v. Dennis,* 79 Ohio St.3d 421, 433 (1997) [The trial court is presumed to consider "only the relevant, material, and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record."].

{¶75} Appellant does not dispute any of the convictions identified by the trial court during the sentencing hearing or in the P.S.I., nor does she claim that her sentence is contrary to law. *Reed*, supra, 2012-Ohio-2827, ¶ 9.  We are thus unable to find that the statements reach the level of plain error and prosecutorial misconduct. *State v. Snyder*,

3rd Dist. Seneca No. 13-12-38, 2013-Ohio-2046, ¶ 48, citing *State v. Combs,* 62 Ohio St.3d 278, 283 *** (1991) [finding that the prosecutor's "gross speculation" was improper but that it did not rise to the level of plain error since the statement did not make a "crucial difference"].  See also, *State v. Thompson*, 11th Dist. Geauga No. 1378, 1988 WL 88350, *3 ["The court made it clear that it was imposing punishment only for the crime with which appellant had been charged * * * and did not improperly impose a sentence longer than that sentence recommended by the parties].

{¶76} Appellant's fourth assignment of error is overruled.

### CONCLUSION

{¶77} Appellant's four assignments of error are overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, Earle, J., concur.